# BRAD BAILEY LAW, P.C.
44 School Street, Suite 1000B
Boston, Massachusetts 02108
T: (857) 991-1945 | F: (857) 265-3184
bradbaileylaw.com

**VIA CM/ECF SYSTEM**

March 8, 2021

Hon. Page M. Kelley
John Joseph Moakley U.S. Courthouse
1 Courthouse Way
Boston, Massachusetts 02210

**Re:**   *U.S. v. Faith Newton, 1:21-cr-10035-GAO-1*
   *Information re: collateral properties offered to secure proposed appearance bond*

Dear Chief Magistrate Judge Kelley:

On Friday, March 6, 2021, this Honorable Court held a hearing on Defendant Faith Newton's ("our client") motion for release on conditions, *see* ECF#24, which, *inter alia*, proposed that she sign a secured appearance bond in the amount of $750,000 to be collateralized by four (4) properties: 30 Angle Street, Unit 52, Lowell, MA ("Angle St."); 11 Dean Drive, Lowell, MA ("Dean Dr."); 18 Bodwell Street, Lowell, MA ("Bodwell St."); and 18-20 Windsor Street ("Windsor St."). The Court took the motion under advisement pending the possible receipt from the defendant of additional and supplemental information regarding the nature of the ownership interests in those properties. Accordingly, undersigned counsel hereby provide the following details relative thereto:

**Angle St. & Dean Dr. Properties**

These properties are owned by Peninnah ("Penny") Muiruri—our client's husband's sister—and her fiancée, Sammy ("Sammy") Mwaura. Penny and Sammy have been in a committed relationship with one another for approximately twenty-seven (27) years since Penny was nineteen (19). Penny and Sammy reside at the Dean Dr. house with their twenty-two (22) year old daughter and eighteen (18) year old son; their eldest daughter (age 28) and her four (4) year old son reside at the Angle St. property.

Penny is currently employed full-time as a registered nurse ("RN") with a home health care company (independent of the companies owned/operated by our client), while Sammy works two (2) full-time licensed practical nursing ("LPN") positions, one of which is with the same company

1

that employs Penny. Penny and Sammy are lawful permanent residents and their three (3) children are all U.S. citizens.

Penny and Sammy purchased their first property, a condominium, in 1998—the Angle St. property—with an initial down payment and received a mortgage on the property to cover the balance which they fully repaid in August 2020. Neither the deposit nor any of the mortgage payments were made with funds originating from our client, her husband, or their business(es); the Angle St. property was paid for entirely with Penny's and Sammy's own funds.

Penny and Sammy resided at the Angle St. property from 1998 until 2006 when they purchased and moved into the Dean Dr. property, a single-family house more spacious than the condominium their family had by then outgrown. They bought the Dean Dr. property for $387,900 with an initial deposit funded by a combination of their equity in Angle St. and retirement savings and a mortgage for approximately $387,000. Their monthly mortgage payment—which they have paid since 2006 with their own funds—is currently $2,200.

Again, none of the funds paid by Penny and Sammy in connection with the Dean Dr. property, or the associated mortgage, were provided by our client, her husband, or their business(es). Indeed, the title history for Dean Dr. reflects Sammy and Penny have struggled financially but have sought to repay their debt themselves without third-party subsidization. Specifically, their mortgage was modified on October 26, 2017 to reduce its principal balance to $313,881.12 and the property had been encumbered by state and federal tax liens.[1]

When Penny and Sammy bought the Dean Dr. property, they decided to keep the Angle St. property as a potential future residence for their children rather than sell it; as noted, they mortgaged their equity in the condominium to help fund the initial deposit for their new family home. Since 2006, when they moved their family into Dean Dr., they have continuously rented out the Angle St. condominium until its mortgage was fully repaid in 2020. Their twenty-eight (28) year old daughter and her four (4) year old son, who needed a place to live and receives no financial support from her son's father, have since moved into the Angle St. condominium and reside therein, with it serving as the latter's primary/only domicile. This has enabled Penny and Sammy, who continue to reside at the Dean Dr. house along with their other two (2) children,[2] to provide

---

[1] A total of two (2) federal, and one (1) Massachusetts, tax liens have been recorded against the property. The first federal tax lien arose from tax year ending December 31, 2014; it was recorded against the property in December 2016 and was released upon payment in October 2018. The second federal tax lien, which does not appear to have been released, was recorded in September 2019 in connection with unpaid taxes incurred in tax year ending December 31, 2017. The Massachusetts state tax lien was recorded against the property in December 2008 for unpaid taxes incurred in 2003/2004 and was released after payment in November 2010.

[2] Their second daughter (22) graduated from in May 2020 and is employed as a nurse at Whittier Rehabilitation in Haverhill and their son (18), who will graduate from high school in May 2021, plans to attend college remotely from home beginning Fall 2021.

both financial and emotional support to their daughter due to the close geographic proximity of the properties.

**Bodwell St. Property**

This property is owned by Beth ("Beth") Mwangi (née Muiruri), our client's husband's *other* sister, and her husband Frances ("Frances") Mwangi. Beth and Frances were married in Kenya in 1994 and reside at the Bodwell St. house with their three (3) children (two (2) sons, aged thirty (30) and sixteen (16), and a twenty-four (24) year-old daughter).[3] Beth has been employed as a full-time LPN with a home health care company (Better Health Care) for the past eight (8) years and Frances is a medical transportation driver. Their eldest son recently dropped out of college in his third year due to alcohol abuse issues and entered a detox program followed by outpatient treatment which he completed; he has been clean for one (1) month with the assistance of active engagement in remote follow-up substance abuse therapy and works off-and-on a part-time basis. Their daughter is currently in her second year of college, which she attends remotely, her education having been delayed by multiple hospitalizations occasioned by an extreme eating disorder. Their youngest child is currently a junior in high school.

Like Penny and Sammy, Beth and Frances owned a property which their family quickly outgrew. They purchased and moved into the Bodwell St. property in 2003 and have resided there since. This property is their sole and primary residence; they own no other property.[4] No funds used to purchase the property or to pay its mortgage were derived from our client, her husband, or their business(es).

Moreover, the title history for the Bodwell St. property reveals that Beth and her husband have struggled to keep up with its mortgage and have not received subsidy from any person(s). For example, in 2010, they received an initial Home Affordable Modification Agreement due to financial hardship and there appears to have been several judgments/executions recorded against the property, ranging from foreclosures initiated by prior lenders, suits for unpaid HOA/condo common area fees, and credit card balances. In 2020, Beth and Frances once again got behind on their mortgage because Frances became unemployed due to the COVID-19 pandemic.[5] Most recently, Beth filed a homestead on the Bodwell St. property on January 14, 2021 and subsequently applied for a forbearance and loan modification. The loan modification was approved on March 1,

---

[3] Beth and her three (3) children are also all U.S. citizens.

[4] Beth and Frances attempted to rent out their first home after they moved into their new home for approximately two (2) years, but tenant-related issues put a strain on their financial ability to maintain both properties and they lost their first property to foreclosure in 2005.

[5] Telemedical appoints drastically reduced the need for medical transportation.

2021 and their first payment is due on April 1, 2021. Notwithstanding, Beth and Frances are in good standing with their mortgage lender, Mr. Cooper.

**Windsor St. Property**

This property is owned by Samuel ("Sam") N. Nganga and his wife, Naomi ("Naomi") W. Ndungu, both of whom are family friends of our client and her husband. Sam and Naomi reside in one (1) of the Windsor St. property units[6] with their three (3) children: a twenty-one (1) year old daughter who recently graduated from UMass with a degree in Psychology but is a presently unemployed and looking for work, a seventeen (17) year old in the 11th grade at Lowell High School and a five (5) year old boy in kindergarten.[7] Sam has two (2) full-time jobs, one as a home health aide with American Training working on ADL's with disabled and elderly people and another as a Certified Nursing Assistant ("CNA") with Hogan which is funded by the Commonwealth of Massachusetts. Naomi works full-time for Life Link, a group home in Lowell. Sam, Naomi and their children are all U.S. citizens.

Sam and Naomi purchased the Windsor St. property on September 7, 2017 for $407,500; they made a down payment of $10,000 and received a $400,118 mortgage for the balance. Their monthly mortgage payment is approximately $2,700 which they pay from their own earnings as supplemented by the approximately $1,500 in rental income they receive from the Unit #20 tenants. This property is their sole and primary residence (Sam and Naomi likewise filed a homestead on the property on the date of its purchase); they own no other property.[8] No funds used to purchase the property or to pay its mortgage were derived from our client, her husband, or their business(es).

**Adequacy of the Condition**

To summarize, the properties offered to secure the appearance bond our client has proposed she sign as a condition of release are each the primary residence[9] and sole property of their respective owners (with the exception of the Angle St. property which is occupied by its owner's daughter and her infant son). Each property was purchased with the owner's source of funds who (with the exception of the owners of the Windsor St. property) have struggled mightily on their

---

[6] Unit #20 of the Windsor St. property is rented out to other tenants.

[7] Sam also supports an eleven (11) year old daughter from another relationship who resides with her mother in Haverhill.

[8] Beth and Frances attempted to rent out their first home after they moved into their new home for approximately two (2) years, but tenant-related issues put a strain on their financial ability to maintain both properties and they lost their first property to foreclosure in 2005.

[9] Indeed, as was previously mentioned, two (2) of the properties have been homesteaded.

own satisfy their financial obligations in connection therewith. No doubt each of these persons, all of whom have resided in this country for most/all of their adult lives and are U.S. citizens (except for Penny and Sammy, owners of the Angle St. & Dean Dr. properties, who are lawful permanent residents but whose children are U.S. citizens), would be damaged irreparably[10] were they to lose their homes in the event our client were to abscond. All would become immediately homeless along with the children, some of whom are either under eighteen (18), in school, unemployed or suffer from mental health/substance abuse issues, they support.

In short, the proposed sureties' confidence our client will not abscond/flee is so substantial that they have offered to put their lives, homes, actual and sweat equity, real-estate futures, even their children's future well-being, squarely in the hands of our client. This "adds considerably to the incentive value" of the condition as proposed, *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991). Their offer to do so states loudly and emphatically: "we have absolute and unequivocal trust in her compliance." We respectfully ask the Court to hear what they have said without hesitation and release her on the conditions proposed, or as modified as the Court deems appropriate under the circumstances.

Sincerely,

/s/ R. Bradford Bailey

/s/ Raymond Sayeg

CC via ECF:
AUSA Rachel Hemani
AUSA David Lazarus

---

[10] There is no reason to think this damage could somehow be ameliorated by reimbursement of money allegedly "hidden" in Kenya. Moreover, such a possibility is so highly speculative that reliance on the same to deny bail in this circumstance would effectively signal that there are no circumstances in which third-party collateral could effectively/sufficiently incentivize compliance.