UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>vs.<br><br>FAITH NEWTON,<br><br>Defendant | Case No. 21-CR-10035-ADB |

**GOVERNMENT'S OMNIBUS RESPONSE
TO DEFENDANT'S MOTIONS *IN LIMINE*__**

The United States respectfully submits this omnibus response to the motions *in limine* filed by defendant Faith Newton ("Newton" or "Defendant") on June 5, 2023. Dkt. 371 – 377, 380. The government understands that the Court has already ruled on these motions, following argument at the final pretrial conference held on June 8, 2023. *See* Dkt. 386. For instance, with respect to Defendant's motions to exclude Arbor records, financial records and texts, and Harvard Vanguard records, the Court denied the motions with leave to renew as to specific records or documents. *Id.* Based on the Court's ruling, the government will not further address those motions at this time. The government will work to focus its trial presentation and will confer with the defense on specific records in an attempt to narrow any areas of dispute. Similarly, the Court denied Defendant's motion to preclude references to regulations and will give a related jury instruction. *Id.* The government will confer with the defense on a proposed instruction.

The government submits this response to briefly address three of Defendant's motions: (1) Defendant's motion to exclude "overview" testimony, Dkt. 374, which the Court granted; (2)

1

Defendant's motion to preclude attorney testimony, Dkt. 375, which the Court granted in part; and (3) Defendant's motion to exclude so-called "hearsay recordings," Dkt. 380.

## I. AGENT TESTIMONY WILL BE CONSISTENT WITH CONTROLLING CASELAW. (DKT. 374.)

In its June 9, 2023 Order, the Court granted Defendant's motion to exclude so-called "overview" testimony and stated that such testimony "will be limited consistent with controlling caselaw." Dkt. 386. As set forth below, the government intends to call law enforcement agents to testify about (1) the course of the investigation, (2) their own observations, and (3) records they have reviewed and analyzed as part of their involvement in the investigation. Consistent with the First Circuit's decision in *United States v. Meises*, 645 F.3d 5 (1st Cir. 2011), the government does not intend to "usurp[] the jury's role as fact-finder" and opine about the role of the Defendant in the charged conspiracies. *Id.* at 16.

Defendant's motion suggests that **no overview** testimony is permissible in a conspiracy case. That is incorrect. There is a difference between opinion "overview" evidence and law enforcement testimony concerning personal observations made during an investigation. In *Meises*, for example, the First Circuit acknowledged that it was appropriate for a law enforcement witness to "describe[e] the sequence of events that he had seen and heard." *Id.* at 15. Such testimony, the Court recognized, "is permissible and valuable to provide background information and to explain how and why the agents came to be involved with the particular defendants." *Id.* at 15 (*quoting United States v. Flores-de-Jesus*, 509 F.3d 8, 19 (1st Cir. 2009)). The case agent in *Meises* crossed the line, however, when he described what he had seen and observed (proper, in the Court's view), but then went one step further and offered his opinion about the defendants' roles in the charged drug conspiracy – identifying the defendants as the "buyers" and "owners of the [drug] money."

*Id.* at 11.  That opinion testimony, the First Circuit held, was improper and "usurped the jury's fact-finding function."  *Id.* at 18.

The testimony of law enforcement agents based upon their own personal knowledge and involvement in an investigation, however, has always been admissible under Rule 701.  *Flores-de-Jesús*, 569 F.3d at 19.   For example, law enforcement agents may provide background testimony concerning the origins of their investigation.  The law of evidence "recognizes an 'information received' rule that allows arresting or investigating officers to explain the reason for their presence at the scene of a crime or how they came to be involved in the investigation." *United States v. Cadden*, No. 14-10363-RGS, 2018 WL 2108243, at *3 (D. Mass. May 7, 2018) (cititng *United States v. Sabetta*, 373 F.3d 75, 83 (1st Cir. 2004)).  Consistent with that principle, agents "should not be put in the misleading position of appearing to have happened upon the scene and therefore should be entitled to provide some explanation for their presence and conduct." *Cadden*, 2018 WL 2102843, at *3 (quoting 2 McCormick on Evid. § 249 (7th ed. June 2016)).

The law enforcement agents that the government expects to call in its case-in-chief will testify in a manner consistent with their personal observations.  For example, they will describe:

- obtaining records from various subpoenaed entities (*e.g.*, Bank of America, MassHealth),
- the seizure of Defendant's phone at the border (CBP Officer Belmarsh),
- the review of Defendant's communications,
- the content of Defendant's communications with Arbor employees, and
- their review of admissible records, such as Arbor patient files, MassHealth claims data, and Bank of America financial records.

The only exception to this will be testimony that explains officers' actions or their investigative steps. Such testimony is neither hearsay nor unfairly prejudicial, and it does not run afoul of the boundaries laid out in *Meises*.

In addition, Special Agents Wisnaskas and Cleverly, of the Department of Health and Human Services Office of Inspector General and Internal Revenue Service, respectively, are expected to provide summary witness testimony and offer a series of summary charts. Special Agent Wisnaskas is expected to summarize the voluminous contents of medical records for a selection of Arbor patients/MassHealth beneficiaries, as well as voluminous MassHealth claims data. Special Agent Cleverly will summarize voluminous financial records, including Defendant's bank records and MassHealth claims data, showing Defendant's receipt of the proceeds of the charged fraud scheme and the charged money laundering transactions. Such summary witness testimony and charts are proper. *See United States v. McElroy*, 587 F.3d 73, 82 (1st Cir. 2009) (holding summary testimony and exhibits properly admitted as tools to clarify complex testimony and evidence, while urging caution).

## II. ATTORNEY TESTIMONY WILL BE LIMITED TO NON-PRIVILEGED MATTERS RELATING TO CHARGED TRANSACTIONS. (DKT. 375.)

In its June 9, 2023 Order, the Court granted Defendant's motion to preclude attorney testimony in part, ruling that privileged communications will not be admitted and that the admissibility of individual communications that may be privileged will be determined during and prior to trial. Dkt. 386. The government understands this guidance and will not seek to introduce evidence covered by the attorney-client privilege.

Defendant's motion specifically challenges the admissibility of testimony of two attorneys who previously represented Defendant on the government's witness list: Matthew Duffy and

Robert Wyman.[1]  At this time, the government no longer intends to call Duffy, mooting the issue as to him.  The government anticipates eliciting from Wyman only non-privileged testimony that is relevant to and probative of the charges against Defendant.

To prove the money laundering counts charged in the Indictment, the government must prove that Defendant engaged in monetary transactions over $10,000 by, through, or to, a financial institution affecting interstate commerce, with money that was derived from the charged health care fraud.  To prove these financial transactions, the government intends to offer several documentary exhibits, including real estate closing and settlement documents, as well as bank and financial records.

To start, the proffered documentary exhibits themselves are not privileged.  "[C]losing transaction documents are typically not protected by the attorney-client privilege." *Waldemar E. Albers Revocable Tr. v. Mid-Am. Energy, Inc.*, No. 7:08-MC-2-HL, 2008 WL 4539379, at *1 (M.D. Ga. Oct. 3, 2008); *see also United States v. Aronson*, 781 F.2d 1580, 1581 (11th Cir. 1986) ("[D]ocuments regarding the disposition of real estate and other property…which by their very nature contemplate disclosure to third parties … are not within the scope of the attorney-client privilege").  Nor are the financial records detailing the flow of funds related to those purchases privileged.  *See O'Donnell v. Sullivan*, 364 F.2d 43, 44 (1st Cir. 1966) (holding that bank records are not protected by the attorney-client privilege); *see also In re Grand Jury Subpoena*, 831 F.2d 225, 227–28 (11th Cir. 1987) (finding that records of property transactions including payment of funds were not protected by the attorney-client privilege because "the privilege only protects communications between an attorney and his client made for the purpose of securing legal advice.

---

[1] The government anticipates calling two additional attorneys, Deb Nguyen and George Holler, who participated in the closing of charged real estate transactions with Newton.  Neither Ms. Nguyen nor Ms. Holler represented Newton in these transactions.

An attorney who acts as his client's agent for receipt or disbursement of money or property to or from third parties is not acting in a legal capacity, and records of such transactions are not privileged."); *S.E.C. v. First Sec. Bank of Utah, N.A.,* 447 F.2d 166, 167 (10th Cir. 1971) (holding that bank records of receipts and disbursements in trust accounts held by attorneys are not protected by the attorney-client privilege). Because these proposed exhibits are relevant and non-privileged, the government should be able to offer them at trial.

    Next, the government must authenticate and lay an appropriate foundation for these documents. As the attorney involved in the closing of the transactions that are the subject of Counts 9 and 14 of the indictment, Wyman has personal knowledge of the relevant documents and is the proper (and now necessary) witness to authenticate these documents. In addition, Wyman was the recipient of the specific wire transfers that are the basis for each of those Counts. The scope of his testimony will be limited to laying the necessary foundation to admit the business records, his receipt of payment from Defendant and subsequent transfer of funds to execute the relevant transactions, and other facts concerning the execution of these two transactions. None of this information is protected by the attorney-client privilege and the government has no intention of eliciting the substance of any privileged communication between Defendant and Wyman.

    It is black-letter law that "[t]he privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney," *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). Attorney-client privilege, for example, does not prevent an attorney's testifying about ministerial or clerical services performed for the client, including tracing a client's transfer of funds. *United States v. Bartone*, 400 F.2d 459, 461 (6th Cir., 1968), *cert. denied*, 393 U.S. 1027 (1969). Similarly, the fact of representation, the identity of the client, and the general purpose of the work performed are not within the scope of

6

the privilege. *First Choice Armor & Equip., Inc. v. Toyobo Am., Inc.*, 273 F.R.D. 360, 362 (D. Mass. 2011); *Gretsky v. Miller*, 160 F. Supp. 914, 915 (D. Mass. 1985).[2]

Because the government does not need or intend to elicit any communications or other information protected by the attorney-client privilege, the government should be permitted to call Wyman and offer the testimony as outlined above.

### III.  RELEVANT STATEMENTS OF THE DEFENDANT CAPTURED ON TAPE ARE ADMISSIBLE.  (DKT. 380.)

Defendant also moves to exclude eleven audio recordings on the government's exhibit list as "inadmissible hearsay." Dkt. 380 at 1.  The motion should be denied.  As briefly set forth below, several of these recordings include statements of Defendant, which are admissible as non-hearsay admissions.  The remaining statements on those recordings are likewise admissible as context for Defendant's statements.  Other recordings include statements of co-conspirators in furtherance of the conspiracy, and those statements are admissible as such.  And the remaining recordings – which do not include statements of Defendant or a co-conspirator – will likely not be offered by the government in its case-in-chief.

*First*, Defendant groups together four recordings of conversations with Defendant ("Category Three") and argues that these recordings should be excluded because they "mostly" contain "hearsay accusations of wrongdoing … which are not adoptive admissions." Dkt. 380 at 6.  The issue is much simpler: Defendant made statements on these recordings during where Arbor-insiders raised serious concerns about wrongdoing at Arbor, including fraudulent billing for

---

[2] While the government is not relying on the crime-fraud exception here, the government notes that the exception may come into play with respect to the communications between Newton and the attorneys identified on the government's witness list.  The crime-fraud exception withdraws the protection of the attorney-client privilege "where the client sought or employed legal representation in order to commit or facilitate a crime or fraud." *In re Grand Jury Proceedings*, 417 F.3d 18, 22 (1st Cir. 2005).  Here, Newton is alleged to have used the services of these attorney-witnesses to commit or facilitate numerous acts of money laundering.  Again, there is no need to reach this issue, as the government does not intent to elicit any evidence or testimony that is even arguably covered by the attorney-client privilege.

nursing visits and home health aides ("HHA") not doing their care. *E.g.*, Ex. 307. The statements of Defendant are party-opponent admissions and are admissible. *See* Fed. R. Evid. 801(d)(2)(A). Moreover, the other statements in the recordings are admissible to put Defendant's statements in perspective and make them intelligible to the jury and recognizable as admissions. *See United States v. Walter*, 434 F.3d 30, 34 (1st Cir. 2006) (noting that the defendant's own statements could be used against him, and that a defendant, having made admissions, cannot keep from the jury "other segments of the discussion reasonably required to place those admissions into context") (internal quotation marks and citation omitted).

Defendant highlights the fact that she "uniformly denied the claims of fraud in all four recordings." Dkt. 380 at 6. For starters, that is not entirely accurate; Defendant's responses to Quintana, for example, fall short of clear denials. But more importantly, the recordings show that Ouko raised serious concerns about fraud with Newton at the end of 2014 – for which Newton fired Ouko – and then in 2016, when Quintana similarly raised concerns about fraud, Newton acted like she did not know what was going on. This shows that Newton was on notice of the fraud from the beginning, and that she was not acting in good faith.

*Second*, Defendant groups together two recordings of conversations between CWs and co-conspirators ("Category Two") and argues that the statements of the co-conspirators were not made in furtherance of the conspiracy. Dkt. 380 at 4-5. That is incorrect; one of these recordings, for instance, contains statements by Joseph Muiruri, a co-conspirator who was involved with Defendant in covering up the health care fraud. In the recording, Muiruri brushes off an employee's concerns about a patient who did not need the services for which Arbor was billing. In the other recording, Syed Hussain (who is on the government's witness list) discusses Defendant's reaction to his reports of fraud within Arbor. This latter recording would not be

8

offered for the truth, but would instead be used as evidence to rebut any claim of recent fabrication or inconsistent statement by Hussain.

*Finally*, Defendant moves to exclude four recordings made by Joseph Ouko in the days leading up to his firing by Newton for his efforts to root out fraud at Arbor. For example, in one recording, Ouko visited a patient of Arbor to confirm that the patient's nurse only visited him two times a week (rather than the 14 times a week for which she was billing), and in another, Ouko visited another patient of Arbor, whose daughter confirmed that the patient's nurse only visited once a week. Ex. 326, 327. The government does not anticipate offering these recordings at trial and will not offer them for the truth of the matters asserted. The government reserves the right to offer these recordings for other purposes, however, such as rehabilitating Ouko if he testifies about these matters and his credibility is attacked.

For the foregoing reasons, Defendant's motion to exclude these recordings should be denied.

| | |
|---|---|
| Date: June 12, 2023 | Respectfully submitted, |
| | UNITED STATES OF AMERICA, |
| | JOSHUA S. LEVY<br>Acting United States Attorney |
| | */s/ Chris Looney*<br>WILLIAM B. BRADY<br>CHRISTOPHER R. LOONEY<br>Assistant U.S. Attorneys<br>1 Courthouse Way<br>John Joseph Moakley U.S. Courthouse<br>Boston, MA 02210<br>(617) 748-3100<br>William.Brady@usdoj.gov |

## **CERTIFICATE OF SERVICE**

      Undersigned counsel certifies that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                        */s/ Chris Looney*
                                        Christopher R. Looney
                                        Assistant United States Attorney

Dated: June 12, 2023