**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>FAITH NEWTON,<br><br>    Defendant. | 21-cr-10035-ADB |

**DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL**
**PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 29**

Pursuant to Federal Rule of Criminal Procedure 29, Defendant Faith Newton ("Ms. Newton") hereby moves for a judgment of acquittal on all counts. As set forth below, the government has failed to prove all elements of each of the crimes charged.

- Ms. Newton should be acquitted on Counts One (Conspiracy to Commit Health Care Fraud) and Two (Health Care Fraud) because the government has not proven beyond a reasonable doubt that she acted with specific intent to commit the crimes charged and that she did not act in good faith.

- Ms. Newton should be acquitted on Counts Seven (Money Laundering Conspiracy) and Eight through Ten (Money Laundering) because the government has not proven beyond a reasonable doubt the underlying specified unlawful activity; that she agreed to engage in a transaction in criminally derived property; and that the transactions were derived from specified unlawful activity.

For the reasons set forth herein, a rational jury could not convict Ms. Newton of these crimes. Accordingly, this Court should enter a judgment of acquittal on all counts pursuant to Fed. R. Crim. P. 29.

## **LEGAL STANDARD**

A district court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). A judgment of acquittal is required if the evidence is not "sufficient to permit a rational jury to find each essential fact to have been proven beyond a reasonable doubt." *United States v. Pappathanasi*, 383 F. Supp. 2d 289, 290 (D. Mass. 2005); *see also United States v. Appolon*, 715 F.3d 362, 367 (1st Cir. 2013).

Although a district court must look at the evidence in the light most favorable to the government, the Rule 29 standard is not a "free pass" for the prosecution. *United States v. Martin*, 228 F.3d 1, 10 (1st Cir. 2000). The court must "reject those evidentiary interpretations and illations that are unreasonable, insupportable, or overly speculative." *Pappathanasi*, 383 F. Supp. 2d at 290-91 (internal quotation marks omitted). "[I]f the evidence, when viewed in the light most favorable to the government, gives equal or nearly equal circumstantial support to theories of guilt and innocence," acquittal is required. *Martin*, 228 F.3d at 10. "This is so because . . . where an equal or nearly equal theory of guilt and a theory of innocence is supported by the evidence . . . , 'a reasonable jury must necessarily entertain a reasonable doubt.'" *United States v. Andujar*, 49 F.3d 16, 20 (1st Cir. 1995); *accord United States v. Cassese*, 428 F.3d 92, 99 (2d Cir. 2005).

In addition, where the government fails to submit any evidence supporting an element of the charged crime, the Court must enter a judgment of acquittal. *United States v. Fernandez*, 913 F.3d 244, 247-51 (1st Cir. 2019) (holding that the district court should have granted the defendants' Rule 29 motion where the government failed to submit any evidence concerning one of the elements of federal programs bribery).

**SUMMARY OF CHARGES**

Count One of the Indictment charges Ms. Newton with conspiracy to commit health care fraud. The elements of health care fraud conspiracy are that (1) the agreement specified in the Indictment existed between those people as alleged in the Indictment, and Ms. Newton specifically intended and agreed that a member of the conspiracy would commit conduct that constituted the underlying crimes alleged; (2) Ms. Newton joined in that agreement willfully; and (3) the conspirators committed an overt act during the period of the conspiracy in an effort to further the purpose of the conspiracy. *See* Def.'s Proposed Jury Instructions, D.E. 370, Ex. A at 20.

Count Two of the Indictment charges Ms. Newton with health care fraud. The elements of health care fraud are that (1) there was a scheme, substantially as charged in the indictment, to defraud a health care benefit program, or to obtain any money owned by or under the custody or control of such a program by means of false or fraudulent pretenses, representations, or promises; (2) Ms. Newton knowingly and willfully participated in this scheme with the intent to defraud; and (3) the scheme was in connection with the delivery of, or payment for, health care benefits, items, or services. *See id.* at 26.

Alternatively, for Ms. Newton to be guilty of aiding or abetting health care fraud, the government must prove that (1) someone else committed the charged offense, (2) that Ms. Newton took an affirmative act in furtherance of that offense, and (3) that Ms. Newton did so intending to facilitate the commission of the offense. *See id.* at 31.

Count Seven of the Indictment charges Ms. Newton with money laundering conspiracy. The elements of the money laundering conspiracy are that (1) there was an agreement between

two or more persons to commit the crime of money laundering, and (2) Ms. Newton willfully joined in that agreement. *See id.* at 43.

Counts Eight through Ten charge her with substantive money laundering. The elements of substantive money laundering are that (1) Ms. Newton engaged in a monetary transaction over $10,000 involving a financial institution and affecting interstate commerce on or about the date specified in the indictment, (2) Ms. Newton knew that the money came from some kind of criminal activity, (3) the money was in fact criminally derived from a "specified unlawful activity" (here, conspiracy to commit health care fraud and/or or health care fraud), and (4) the monetary transaction took place in the United States, or was engaged in by a person in the United States. *See id.* at 49.

### dArgument

**I. THE GOVERNMENT HAS FAILED TO PRESENT EVIDENCE THAT MS. NEWTON ACTED WITH SPECIFIC INTENT TO COMMITT THE CRIMES CHARGED.**

All remaining counts of the Indictment require that the government prove that Ms. Newton acted with specific. It is the government's burden to prove each element of the crimes charged, including her specific intent, beyond a reasonable doubt. The government must further prove—also beyond a reasonable doubt—that Ms. Newton did not act in good faith. *See United States v. Dockray*, 943 F.2d 152, 155 (1st Cir. 1991).

### a. Regulatory Violations are Not Crimes.

The government has alleged that Arbor failed to comply with the applicable health care regulations. But, even if true, regulatory violations at Arbor are not crimes. *See United States v. Munoz-Franco*, 487 F.3d 25, 66 (1st Cir. 2007) ("[C]ivil and regulatory violations do not establish criminal culpability."). At trial, the government did not adduce evidence that (i) Ms. Newton understood what was required by the applicable regulations, (ii) Ms. Newton knew

4

that Arbor failed to comply with the applicable regulations, or (iii) Ms. Newton was responsible for causing Arbor to fail to comply with the applicable regulations. Instead, the evidence supports that Ms. Newton and others at Arbor did not think that there was anything improper. For instance,

- Airanaisse Quintana said that Ms. Newton had worked at Compassionate Homecare before Arbor, and that Arbor used the same hiring paperwork and training program that Compassionate Homecare used. 6/30/23 Tr. at 36:18-38:4.

- Nobody has said that Ms. Newton ever administrated the training herself, and there is no evidence that she ever observed the training sessions. *See, e.g.*, 6/30/23 Tr. at 38:5-13; 6/30/23 Tr. at 160:8-9.

- Ms. Quintana acknowledged that Arbor enrolled in an online training platform and made this online training available to all new home health aides. 6/30/23 Tr. at 38:17-23.

- Most of the witnesses who formerly worked at Arbor testified that they did not realize, at the time, that it was not permitted to pay referral fees.

- MassHealth itself seemed to realize there was confusion about referral payments, because it was not until 2022 – long after Arbor was closed – that MassHealth implemented a regulation specific to home health agencies providing that home health agencies cannot pay for referrals. *See* Exhibit 900.

- Dr. Gorn testified that he received Plans of Care from several home health agencies in addition to Arbor, suggesting that the practices in question were widespread among home health agencies at the time. 6/30/23 Tr. at 53:9-19.

Absent evidence that Ms. Newton believed that Arbor's practices were noncompliant, it would be improper to allow counts premised on Ms. Newton's specific intent to go to the jury. *See Fernandez*, 913 F.3d 244, 247-51; *Pappathanasi*, 383 F. Supp. 2d at 290.

### b. The Government Has Failed to Meet its Burden Under *Petrozziello* to Admit Coconspirator Statements.

In seeking to prove each element of the charged crimes, including Ms. Newton's knowledge of the applicable regulations and specific intent to commit health care fraud, the government has relied, in part, on out-of-court statements of alleged unindicted coconspirators.

5

The government sought to introduce such statements pursuant to Federal Rule of Evidence 801(d)(2)(E).  *See United States v. Petrozziello*, 548 F.2d 20 (1st Cir. 1977).

In particular, the government admitted voluminous Arbor personnel records and patient records.  *See*, *e.g.*, Exs. 335, 346, 352-53, 357, 706-10.  While the government has asserted that many of these records are not being admitted for their truth (and therefore, no hearsay admission need apply), many individual components of these records were offered for their truth – for example, the employee or patient at issue; the date of hire or visit; etc.  Because the government did not offer any independent evidence as to the identities of many of these individuals (for example, Karanja Kabuga in Exhibit 706), the sole basis for finding that the individual was a coconspirator is the statement itself, and the statement cannot be admitted as a coconspirator statement.  Fed. R. Evid. 801(d)(2) ("The statement must be considered but does not by itself establish . . . the existence of the conspiracy or participation . . . ").

Likewise, Adriana O'Donoghue testified that Arbor employee Rosa Gonzalez-Riviera instructed her to input false billing entries.  However, Ms. Gonzalez-Riviera testified that she did not agree with Ms. Newton to commit healthcare fraud and therefore is not a coconspirator.  Accordingly, Ms. Gonzalez-Riviera's statements cannot be admitted as co-conspirator statements.

Because the government failed to satisfy *Petrozziello*, the jury cannot consider the out-of-court statements made by Ms. Newton's alleged unindicted coconspirators for their truth.  Without these statements, the government's case against Ms. Newton is weakened further.

## II. THE GOVERNMENT HAS FAILED TO PRESENT EVIDENCE THAT THE FUNDS INVOLVED IN THE ALLEGED MONEY LAUNDERING TRANSACTIONS WERE "CRIMINALLY DERIVED PROPERTY."

As a threshold matter, because the government has not proved health care fraud and health care fraud conspiracy, it has not proven the specified unlawful activity underscoring the

6

money laundering and money laundering conspiracy charges, and the Court should enter a Rule 29 judgment of acquittal as to those counts.

In addition, this Court should enter a judgment of acquittal on Counts Seven through Ten, charging Ms. Newton with money laundering under 18 U.S.C. § 1957 and money laundering conspiracy, because the government has not proven the existence of an agreement and has not traced the funds used in the alleged money laundering transactions to the specified unlawful activities that supposedly generated those funds.

### 1. The Government Has Not Proven the Existence of a Conspiracy as to Money Laundering

Count Seven charges money laundering conspiracy under 18 U.S.C. § 1956(h). An essential element of any conspiracy charge, money laundering or otherwise, is the existence of an agreement. The only individual whom the government has identified as a coconspirator as to the money laundering charges is Ms. Newton's husband, Ben Muiruri. Yet there is no evidence of an agreement between Ms. Newton and Mr. Muiruri on the money laundering transactions, and the government cannot ask the Court and jury to assume a relationship simply on the basis of their relationship.

### 2. The Government Has Not Proven that the Funds Involved in the Alleged Money Laundering Transactions Were "Criminally Derived Property"

This Court should also enter a judgment of acquittal on each of the substantive money laundering counts because the government has not proven that the funds in each transaction were "criminally derived property." Money laundering under § 1957 has five elements:

(1) the defendant knowingly engaged in a monetary transaction;
(2) knowing that the transaction involved criminally derived property;
(3) the criminally derived property had a value greater than $10,000;
(4) the property was, in fact, derived from health care fraud; and

7

(5) the transaction occurred in the United States.

*See* Def.'s Proposed Jury Instructions, D.E. 370, at 51; *see also* First Circuit Pattern Criminal Jury Instruction 4.18.1956(h) (quoting *United States v. Misla-Aldarondo*, 478 F.3d 52, 68 (1st Cir. 2007)); First Circuit Pattern Criminal Jury Instruction 4.18.1957.

Where an alleged money laundering transaction is a transfer from a "commingled account"—an account containing both money that was *not* criminally derived and money that *was* criminally derived—to prove that the transaction at issue was in criminally derived property, the government must trace the money to an unlawful activity. The government seems to be relying on the assumption that all funds from Arbor's accounts were the result of health care fraud, but this allegation is inconsistent with the evidence. Multiple witnesses (for example, Regina Arrey, Winnie Waruru, and Adriana O'Donoghue) testified that they provided medical care to patients. Where the money involved in an alleged money laundering transaction comes from a "commingled account," the government may not rely on a presumption that the money involved in the transaction was criminally derived unless the amount of money involved in the transaction exceeded the amount of non-criminally-derived money in the account. *See United States v. Weisberg*, No. 08-CR-347, 2011 WL 4345100 at *4-5 (E.D.N.Y. Sept. 15, 2011) ("[T]he Government may not rely on a presumption that a withdrawal from a commingled account is a transaction 'in' dirty money."); *see also United States v. Davis*, 226 F.3d 346, 357 (5th Cir. 2000); *United States v. Hanley*, 190 F.3d 1017, 1025-26 (9th Cir. 1999) ("[T]he government may prove that the amount of a particular withdrawal or transfer exceeded the total of all non-criminally derived funds in the account just prior to the withdrawal," in order to prove the § 1957 charge).

The First Circuit has not adopted or rejected this rule, but the court in *Weisberg* made two compelling arguments for adopting this rule. First, the *Weisberg* court stated that the

8

different statutory language of 18 U.S.C. § 1956 and 18 U.S.C. § 1957 compels the courts to treat transactions coming from commingled accounts differently under § 1956 than under § 1957. *Weisberg*, 2011 WL 4345100 at *2. The court noted that § 1956 criminalizes financial transactions "which in fact involve[] the proceeds of specified unlawful activity." *Weisberg*, 2011 WL 4345100 at *2. On the other hand, § 1957 criminalizes a transaction "in criminally derived property." *Id.* at *3. A transaction can *involve* proceeds (as required by § 1956) if the transaction utilizes funds from an account containing both clean and dirty money, even if the transferred funds themselves are clean. On the other hand, for a transaction to be *in* criminally derived property (the language of § 1957), the transferred funds must themselves be dirty.[1]

Second, the *Weisberg* court stated that § 1957 should require the government to do more to prove that the funds involved in the transaction were criminally derived property than what § 1956 requires because § 1956 already has a stricter *mens rea* requirement. *Weisberg*, 2011 WL 4345100 at *3. Under § 1956, the government must prove (i) that the defendant knew the transaction involved unlawful proceeds *and* (ii) that the defendant knew that the transaction would conceal further unlawful conduct. *Id.* Section 1957, on the other hand, "requires only that the defendant know that the money 'in' the transaction is 'criminally derived.' No further *mens rea* is necessary." *Id.* at *3. Because the *mens rea* in § 1957 is minimal the government should be required to show more in order to benefit from the presumption that the transaction from a commingled account was a transaction in criminally derived property.

The court noted,

---

[1] "The difference between § 1957, where the Government cannot rely on such a presumption, and § 1956(a)(1), where it can, is justified by the different language used in the two statutes. Under § 1956(a)(1), the Government need only prove that the transaction 'involve[d]' dirty money. . . Under § 1957, the Government must prove that the transaction was 'in' dirty money." *Weisberg*, 2011 WL 4345100 at *5.

9

> If the Government could rely on a presumption that a withdrawal from a commingled account was 'in' dirty money, a defendant could be held liable under § 1957 if he deposited $10,000 in dirty money into an account twenty years before his indictment, and if, after that deposit, the account legitimately grew to $100,000 (purely as a result of independent, clean deposits), from which the defendant made an otherwise legal $20,000 withdrawal. In such a scenario, the only act committed with criminal intent would have been the twenty-year-old dirty deposit. Nevertheless, the Government would be able to charge the defendant, since the $20,000 withdrawal would have taken place within the five-year statute of limitations. . . Such a harsh result is avoided in § 1956(a)(1) cases, because of the requirement of additional, criminal intent at the time of the financial transaction.

*Weisberg*, 2011 WL 4345100 at *5 n.6.

Here, the government has alleged that Ms. Newton committed money laundering on three separate occasions—the transfers charged in Counts Eight through Ten. These transfers involved money coming from three different accounts, each of which is a "commingled account." Therefore, for Ms. Newton to be guilty of any one charge of money laundering, the government must either trace the money involved in the transaction directly to an unlawful activity (i.e., a billed visit that did not happen) or prove that the amount of money involved in the transaction exceeded the amount of non-criminally-derived money in the account at the time of the transfer. Here, the government has done neither. Accordingly, the government has failed to meet its burden with respect to these substantive money laundering counts, and they must be dismissed.

## CONCLUSION

For the reasons stated herein, this Court should grant Ms. Newton's motion for judgment of acquittal on Counts One, Two and Seven through Ten of the Indictment.

10

## **ORAL ARGUMENT**

Ms. Newton respectfully requests oral argument on her motion.

        Respectfully submitted,

        /s/ *George W. Vien*
        George W. Vien (BBO # 547411)
        Michelle R. Pascucci (BBO #690889)
        Nathaniel R.B. Koslof (BBO # 691094)
        DONNELLY, CONROY & GELHAAR, LLP
        260 Franklin Street, Suite 1600
        Boston, Massachusetts 02110
        (617) 720-2880
        gwv@dcglaw.com
        mrp@dcglaw.com

## **LOCAL RULE 7. 1 CERTIFICATION**

  Pursuant to Local Rule 7.1, I certify that I conferred with counsel for the government and attempted in good faith to resolve or narrow the issue.

                /s/ *George W. Vien*
                George W. Vien

**CERTIFICATE OF SERVICE**

   I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), on July 6, 2023

                /s/ *George W. Vien*
                George W. Vien