```
 1              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS
 2

 3   _____

 4   UNITED STATES OF AMERICA,

 5        Plaintiff,                    Criminal Action No.
                                        1:21-cr-10035-ADB
 6        v.

 7   FAITH NEWTON,

 8        Defendant.

 9   _____

10

11    BEFORE THE HONORABLE ALLISON D. BURROUGHS, DISTRICT JUDGE

12

                          JURY TRIAL
13                          Day 8

14

15

                    Monday, July 10, 2023
16                       9:31 a.m.

17

18

19

20

21   John J. Moakley United States Courthouse
     Courtroom No. 17
22   One Courthouse Way
     Boston, Massachusetts
23

     Rachel M. Lopez, CRR
24   Official Court Reporter
     raeufp@gmail.com
25
```

1                    **A P P E A R A N C E S**

2

   On behalf of the Plaintiff:

3

4       UNITED STATES ATTORNEY'S OFFICE - MASSACHUSETTS
        BY:  WILLIAM B. BRADY AND CHRISTOPHER R. LOONEY
        John Joseph Moakley Courthouse
5       One Courthouse Way, Suite 9200
        Boston, Massachusetts  02210
6       (617) 748-3100
        william.brady@usdoj.gov
7       christopher.looney@usdoj.gov

8

9    On behalf of the Defendant:

10      DONNOLLEY, CONROY & GELHAAR, LLP
        BY:  GEORGE W. VIEN AND MICHELLE R. PASCUCCI
11      260 Franklin Street
        Suite 1600
12      Boston, Massachusetts  02110
        (617) 720-2880
13      gwv@dcglaw.com
        mrp@dcglaw.com

14

15

16

17

18

19

20

21

22

23

24

25

**P R O C E E D I N G S**

1

2          (In open court.)

3          THE COURT:  I am unhappy.  And because I am

4    unhappy, we are all going to become unhappy.

5          MR. VIEN:  That's encouraging.

6          THE COURT:  All right.  So are you going to address

7    why I'm unhappy, before I tell you why I'm unhappy?

8    Mr. Brady is standing up.

9          MR. VIEN:  I think we were both worried about

10   asking.

11         THE COURT:  He was standing up.  I wondered if he

12   was going to wade in, or if he was going to wait until I

13   spoke.

14         MR. VIEN:  My natural inclination was to ask why,

15   and then I'm going, well, she actually seems a little edgy,

16   maybe I'll shut up for once.

17         MR. BRADY:  Same here, Your Honor.

18         MR. VIEN:  He said he didn't care.  He told me

19   before he said he was a little tired of dealing with your

20   moods.  I don't know why he said that.

21         THE COURT:  I just want to say that I'm unhappy,

22   and I'm 110 percent certain that when I finish this little

23   speech, you all will be at least as unhappy as I am.  So

24   share the unhappiness.

25         First thing, yesterday -- Friday, as we discharged

1    the jury, we got a question from them, which oddly was

2    delivered by the foreperson but signed by somebody else.

3    We'll get to that.  That would be the easy part of our

4    morning presentation.

5              Thereafter, Karen got an e-mail from a different

6    juror, which says, "Hi, Karen.  I have a concern about

7    something that happened during deliberation.  Would you mind

8    calling me?"

9              I had Karen -- Karen called me.  I had Karen write

10   back to her.  "Hi.  I just spoke with the judge, and she

11   would rather you put your concern in writing.  You can e-mail

12   me your concern, and I will pass it along to the judge.

13   Thank you."

14             Okay.  Later that night -- so that all happened

15   like in the 4:00 to 5:00 range.  At 7:09, we got the

16   following from the juror.  "Thank you, Karen.  I reached out

17   to you because I'm not sure about how the Court feels about

18   the following information and admission.  I don't know if

19   it's true or false or if it's important to convey.

20             "At the onset of our general go-around of feelings,

21   concerns, impressions, suggested by another juror, a man

22   named Roshon" -- so that's juror number 5, I think -- "firmly

23   stated that Ben Muiruri, Faith's husband, was not charged

24   because he gave the money back, and Faith didn't want to.

25   When pressed twice on how he knew this, Roshon said, 'From

1    the Internet.'  He made a statement to the effect of, 'Come

2    on, we all did it.'  I told him that I was uncomfortable and

3    requested that he stop talking about it.

4         "I prefer anonymity in order to remain neutral with

5    my cohort, but I defer to you.  I have no experience as a

6    sitting juror and will just carry on, unless informed

7    otherwise."

8         Are you unhappy, Mr. Brady?

9         MR. BRADY:  Your Honor, I'm struggling to find the

10   words to capture the emotions that I'm feeling at the moment.

11        THE COURT:  So this is -- I am -- so then I called

12   you and had you come in another 15 minutes early, so we have

13   half an hour to deal with this.

14        We've done some research on it over the weekend.

15   I've talked to some of my colleagues about this.  And we need

16   to talk to each juror individually, find out who heard what,

17   see if this really happened.  My proposal is that we start

18   with the foreperson, who is neither the speaker nor the

19   reporter, and then take it from there.

20        We've -- I had, on Friday, told alternates 3 and 4

21   they didn't need to come today, that we would call them if we

22   needed them.  We called them back over the weekend.  We have

23   all four alternates here.  I gave them an instruction about

24   keeping their minds pure over the weekend.  So we have the

25   four alternates; they're in one room.

1              The other 12 jurors will be upstairs shortly.  I

2    have reserved another room, and my -- my suggestion is, just

3    to see where we are, that we bring them in one at a time,

4    starting with the foreperson.  We can decide who's going to

5    be next.

6              The foreperson is number 4, and the alleged

7    publicity exposer is number 5, so it may make sense to just

8    bring in 4 and then 1, 2, 3, 5, just to not -- I don't want

9    to out the other juror who sits in the back row.  I'll tell

10   you who she is when we're bringing her in.  But actually, I

11   can tell you who he is now.  I made copies of all of this for

12   you, so let me give it to you and you can think about it.

13             We have -- if somebody has a different proposal,

14   I'm willing to hear it.  I think I'm in my ninth year of

15   doing this.  I've never declared a mistrial.  I've never done

16   an individual colloquy of the jurors mid-trial.  So I

17   doubt -- I'm suspecting that none of you have much experience

18   with this, either, so I'm willing to brainstorm on it.

19             MR. BRADY:  I had a trial last fall with

20   Judge Saylor, Your Honor, where we had an issue with a juror.

21   And part of -- it didn't have a happy ending, I'll say that.

22             THE COURT:  He was one of the judges that I

23   consulted with.

24             MR. BRADY:  Lucky me.

25             But I think, Your Honor, what you proposed makes

```
 1   sense.  I think it makes sense to get to the bottom of it.  I
 2   think we have to do it in a very delicate, discreet way.  And
 3   I think what you proposed makes sense in that respect.
 4              One question.  The original question that was
 5   handed --
 6              THE COURT:  Yes, the original question, which
 7   seems, you know, vanilla at this point, "Is signing a
 8   certificate of training for which training has not been
 9   completed when used to seek reimbursement a federal crime?"
10              So I think that's just a matter of crafting
11   something about how it's evidence that can be considered, but
12   that's not a crime anybody has been charged with.
13              MR. BRADY:  And I think, Your Honor, I think we
14   have in the instructions something that addresses just that.
15              THE COURT:  So that one, if we get to this --
16              I mean, look, this is -- the accusation is -- or
17   the communication is that this was said in front of every
18   juror.  So it's not going to be a matter, I don't think -- or
19   it's not necessarily going to be a matter of excising just a
20   speaker and a hearer.  Right?  I mean, this is -- so I don't
21   know that we get to this question.  So we will sit tight on
22   that for a little bit, as far as I'm concerned.
23              I brought you in early because I didn't know -- I
24   mean, I don't know if anybody wants to do their own research
25   on this or talk to anybody or think about it beyond this.
```

1              And my -- I need the two jury rooms to keep

2    everybody separate once we've talked to them, mine and Judge

3    Young's.  So I'm planning on doing the questioning in here

4    from the jury box.  And so, I don't know, we can -- I was

5    going to give you the next -- once we've hashed this out and

6    sort of got a plan of action, to let you go back to your

7    corners and figure out, give it some thought.

8              MR. BRADY:  I think that would be helpful,

9    Your Honor, just a few minutes, just to consult with folks

10   about that.

11             I mean, it seems to me the process here is sort of

12   establishing, obviously, what happened, and then trying to

13   figure out, to the extent that, you know, there's taint, you

14   know, the scope of that.  And then, you know, beyond that,

15   just to what extent can the remaining jurors, assuming that

16   this individual did independent research in violation of his

17   oath, I think it's pretty clear that he's got to go.

18             And then the question is can the other jurors,

19   after full colloquy with the Court, be rehabilitated to the

20   point where they can say, "Look, we understand our duty is to

21   focus on the evidence here, and we're going to stick to

22   that."

23             THE COURT:  So Mr. Vien, is your client anywhere

24   present?

25             MR. VIEN:  She's going to be here at 10:00,

1    Your Honor.

2              THE COURT:  Because, just to sort of think about

3    all possible scenarios here, if they all heard it, and we can

4    get by with discharging, you know, four or less and replacing

5    them with alternates, I assume you'll -- you'll certainly

6    have the option of a mistrial motion.  And I don't --

7    you'll -- I'm sure you can't make a decision on that now,

8    until you've heard what they have to say.

9              But once -- if you decide that we can go forward

10   with what we have, which, you know, I'm sure that will factor

11   into your calculus how you think the trial has gone for you.

12   But if you decide it can go forward, I'll need to colloquy

13   her, as well.  Because I -- I mean, I don't know if she would

14   be convicted or not.  But obviously if we go forward under

15   that scenario and she's convicted, there's a potential

16   ineffective assistance claim on agreeing to go forward.  So I

17   just want to try and cover all the bases that we can on it.

18             MR. VIEN:  I think that's very smart, Your Honor,

19   and I agree with the procedure.  Step one, we have to find

20   out the facts, and then we can figure out what to do with it.

21             THE COURT:  Is everyone okay starting with the

22   foreperson?  I think that's the reasonable place to start.

23             MR. BRADY:  I agree, Your Honor.

24             THE COURT:  And then once we talk to him, we can

25   make a decision about who's next.

1          MR. VIEN:  That sounds right.

2          And just for my own -- I've been through this a

3     long time ago, and I can't remember.  Is the questioning of

4     the juror, is that in public or is it under seal or --

5          THE COURT:  Well, at the moment, there's nobody in

6     here except my interns and government people.

7          MR. VIEN:  No, I -- that's fine, but if someone

8     were to come in --

9          THE COURT:  So I'm happy -- I will seal it.  Let's

10    cross that bridge when we come to it.  Okay.  You think

11    there's going to be people in here?  I'm just not sure where

12    to do it.

13         MR. BRADY:  I think just generally, I think,

14    generally sealing the courtroom is something that I think the

15    government is going to be opposed to.  But maybe something at

16    sidebar.  I'm sure there's a solution, Your Honor, we can

17    figure out.

18         THE COURT:  But we are all victims of our own

19    experience, and I had an appellate issue for a constructive

20    closing of a courtroom, and I don't do that unless it's

21    absolutely necessary.

22         We can't do it out here, because the jurors

23    upstairs can hear from the bottom of the staircase.

24         MR. VIEN:  Do you think the jurors will be more

25    comfortable if they're closer to you, Your Honor?

1              THE COURT:  I just think they always sit there.

2              MR. VIEN:  But I'm not going to object to where you

3      put them.

4              And I assume you'll be doing the questioning.

5              THE COURT:  I'm going to be doing the questioning.

6      And then depending on what they say, I mean -- I mean, if

7      there are big decisions to be made here, Mr. Vien, they're

8      going to be on your side of the V, in all likelihood.

9              MR. VIEN:  I understand.

10             So if there's follow-up questions that you feel

11     like you need or the government needs, we'll do that in sort

12     of a discreet way.  I don't want -- I don't want the jury to

13     feel pressure from either side or criticism from either side.

14     I don't want that.  It's all going to come from me.  But

15     we'll figure out a way to -- if you want to see me at sidebar

16     before we let one step out, we can do that.

17             Karen, do we have another -- if we do this in my

18     robing room, where can we put the alternates?

19             THE DEPUTY CLERK:  I have no idea, because we used

20     Judge Young's for --

21             THE COURT:  I can't use his roping room, because

22     it's way too nice.  You should see his robing room.  It's

23     nicer than my living room.  I can't do it in his robing room.

24             THE DEPUTY CLERK:  I mean, if you asked him, then

25     we could, we could do it in there.

1          THE COURT:  I don't want to do it in there.

2          We could put the alternates at the round table.

3          Guys what do you think about putting the -- by

4   which I mean guys and gals.  What do you think about letting

5   the alternates sit with the jurors that we haven't questioned

6   yet, and then I can free up their room?

7          MR. VIEN:  I'm okay with it, as long as you need to

8   obviously tell them, "Don't deliberate, and talk about the

9   case, or what's going on," or any of that.

10          And should Ms. Newton be here for the questioning?

11   Because, obviously, this is going to be -- the decision,

12   obviously, she has to be consulted on, but -- I don't want to

13   delay things, but she could probably make a more informed

14   decision if she is sitting here.

15          THE COURT:  I mean, there -- I mean, we could start

16   pulling the jurors down now, because I'm sure there's some of

17   them up there.  But it's also fine to wait until 10:00.

18   That's up to you whether you want her here or not.  I mean,

19   you -- you know, look, that's between you and her.  Because

20   you want some fulsome answers to these questions, and having

21   her there may make people --

22          MR. VIEN:  I'd like to give her the choice, though.

23          THE COURT:  Yeah, that's fine.

24          MR. VIEN:  So I can check.  She usually gets here

25   early.

1              THE COURT:  Well --

2              (The Court and the deputy clerk confer.)

3              THE COURT:  I'm trying to set up that we can do the

4      individual questioning back in Judge Young's robing room.

5              MR. VIEN:  Your Honor, may I just go outside and

6      see if she's here?

7              THE COURT:  Yeah.  Whatever.  We don't need to

8      start until 10:00.

9              MR. VIEN:  Okay.

10             THE COURT:  I'm not rushing anybody.

11             MR. VIEN:  Okay.

12             (Court in recess at 9:47 a.m.

13             and reconvened at 9:53 a.m.)

14             THE COURT:  Guys so I know each of you are missing

15     each of your partners, but just figure out amongst yourselves

16     whether you want me to bring the whole jury in and tell them

17     not to deliberate until everybody's present, or you think the

18     instructions that I've given in the past suffice for that.

19             MR. BRADY:  And the past instructions were:  Do not

20     deliberate unless you're all together.

21             THE COURT:  Right.  So I can also have Karen, when

22     she grabs the first one, just tell everybody that we're on

23     hold for a while, and they should not be deliberating.  But

24     if you want me to bring them all in and --

25             THE DEPUTY CLERK:  They may already be up there.

1    Like I don't know if they're all there already.

2            THE COURT:  Why don't you go and pop your head in,

3    and tell them something's come up and they should not

4    deliberate until they've heard from us again.

5            Is that all right with everybody?

6            MR. BRADY:  That's sufficient from my perspective.

7            THE COURT:  Why don't you go up and do that.  Can

8    you do that?

9            THE DEPUTY CLERK:  Yeah.

10            THE COURT:  So I just spoke to Mr. Brady and

11    Ms. Pascucci.  Just in case all of the jurors are already up

12    there, I sent Karen up to tell them to hold off on

13    deliberating until further instruction.

14            Does your client want to be present for the

15    individual voir dires?

16            MR. VIEN:  She would like to be present,

17    Your Honor.

18            THE COURT:  Okay.  We'll do it back in my robing

19    room.  I just have to wait for the fourth alternate to get

20    here to move them out of my robing room.  It feels like a big

21    be building; sometimes it doesn't.

22            MR. VIEN:  It is funny how much trouble it is just

23    finding the right space.  But --

24            MR. BRADY:  Your Honor, while we're kind of waiting

25    for this to play out, I just want to flag one thing now, kind

```
 1    of looking at the alleged comments from Mr. -- about looking
 2    on the Internet and seeing that he wasn't charged because he
 3    gave the money back.  We've looked on the Internet, too.  We
 4    haven't seen any evidence of that.  So I just -- I don't
 5    think that's correct, even.
 6              THE COURT:  Well, I looked it up over the weekend,
 7    and I know exactly what article it's coming out of.
 8              MR. BRADY:  Okay.
 9              THE COURT:  So it's not exactly accurate, but I saw
10    where it came from or where I thought it came from.  It's --
11    it said that he was involved in earlier conduct, paid the
12    money back, she was charged later.  He's making an assumption
13    that that's not why he was charged.  But I know the
14    information is -- it's not -- it's not made up out of whole
15    cloth, in my view -- not necessarily made up out of whole
16    cloth.
17              MR. BRADY:  Again, that's many steps ahead of us,
18    Your Honor.  So if we have to deal with that --
19              (Court in recess at 9:57 a.m.
20              and reconvened at 9:57 a.m.)
21              (The following held in the robing room.)
22                           **VOIR DIRE**
23              (Juror present.)
24              THE COURT:  How are you?
25              THE WITNESS:  Good, how are you?
```

```
 1              THE COURT:  Surprised to be here, right?  The
 2    reason you're here, it's in your capacity as foreperson.  And
 3    we received a report on Friday afternoon that one of the
 4    jurors had mentioned during a general discussion that he had
 5    gotten some information from the Internet during the course
 6    of the trial.  And so we obviously have an obligation to sort
 7    of see -- try and figure out what happened, if it happened.
 8              So did it happen?
 9              THE JUROR:  (Indicating.)
10              THE COURT:  Can you tell me?
11              THE COURT REPORTER:  I need a verbal response.
12              THE COURT:  Yes.
13              THE JUROR:  Yes, it did happen.
14              THE COURT:  Can you run it down for us?
15              THE JUROR:  The person said they looked up the case
16    and saw that, I guess, Faith's husband had a plea agreement
17    or something to that effect.  And that was it.
18              THE COURT:  Did everybody hear it?
19              THE JUROR:  My guess would be yes.
20              THE COURT:  Everybody.  So it wasn't a side
21    discussion?
22              THE JUROR:  No.
23              THE COURT:  And was it just that single comment?
24              THE JUROR:  From what I can recall, yes.  And then
25    we all just said, okay, stop.
```

```
 1            THE COURT:  What was the context in which it came
 2   up?
 3            THE JUROR:  I think he just kind of said it.  We
 4   just got into the room.  And I think within the first couple
 5   of minutes, or so, and said, "Oh, yeah, I went on and
 6   looked," and so forth, and saw that her husband had some kind
 7   of a deal, whatever it was, worked out.
 8            THE COURT:  Did -- did anybody else indicate that
 9   they had also done that kind of --
10            THE JUROR:  No.
11            THE COURT:  So from sitting in the room, you don't
12   have any reason to believe that it was anyone but him that
13   looked it up?
14            THE JUROR:  That's correct, yes.
15            THE COURT:  Topic change.  I mean, we went to a lot
16   of trouble to get a fair and impartial jury, and the
17   defendant is entitled to a fair and impartial jury.  So now
18   we took our very untainted jury and exposed them to
19   information that -- I mean, I'm not even going to confirm or
20   deny that it's accurate.  There's -- so if we were to allow
21   the jury to continue deliberating, is this something that you
22   think you could put out of your mind completely, or do you
23   think that this changes your perspective on the case in some
24   way or another?
25            THE JUROR:  It is difficult to say, because I
```

1    thought about it over the weekend, of course.  And I -- say,

2    if what he said was true, then, yeah, I think it's going to

3    play a role in things.  I don't know if we can put it out of

4    our minds.

5              THE COURT:  Okay.

6              THE JUROR:  It was not brought up after we said

7    stop.

8              THE COURT:  Yeah.

9              THE JUROR:  But you don't know what happens maybe

10   the length -- if this goes longer than Thursday, something

11   doesn't pop up saying, "Oh, well, this has to be true because

12   of what was said last week."  I don't know.

13             THE COURT:  All right.  I'm just going to have you

14   step right outside the door.  I'm going to find out if anyone

15   here has any follow-up questions for you.

16             We're going to talk to everybody, but once we talk

17   to you, we'll move you to a different room.

18             THE JUROR:  Okay.

19             THE COURT:  So if we send you to the other room,

20   you will be joined by other jurors shortly, and you should

21   not discuss any of this.

22             THE JUROR:  Okay.

23             THE COURT:  Let me see if any party has questions.

24             (Juror not present.)

25             THE COURT:  It seems he's gone.  He needs to be

1  discharged.

2          Right?  Does anybody disagree with that?

3          MR. VEIN:  No.

4          MR. BRADY:  I'm sorry, just to be clear on who the

5  "he" here is?

6          THE COURT:  The foreperson.  He just said he was

7  not sure that he could put it out of his mind.

8          MR. BRADY:  I agree with that, Your Honor.

9          THE COURT:  Okay.  So he needs to be discharged.

10  But before I start bringing in the others, does anybody have

11  any follow-up questions for him?  And I'm raising this

12  because, since we are going to discharge him, we can question

13  him any way we want.  So if there's -- if there's background

14  information that anybody would like?  Do you want me to

15  confirm with him the identity of the juror?

16          MR. BRADY:  I think that would be helpful,

17  Your Honor.

18          THE COURT:  All right.  And is there anything else

19  that anybody wants to talk to him about, wants to know?

20          MR. BRADY:  Your Honor, not for this juror, but

21  just going forward, I think, perhaps, kind of the topic shift

22  questions, I assume Your Honor will instruct the jurors that

23  you are to put this out of your mind and you are not to think

24  about it.

25          THE COURT:  Yes.

1              MR. BRADY:  And I think perhaps framed that way,

2      will you follow that instruction, it might be helpful to get

3      an answer to that.

4              THE COURT:  Well, I'm not sure that quite gets the

5      job done, because I don't know how he would have answered

6      that question, right?  And it's -- all right.  So --

7              THE DEPUTY CLERK:  Bring him back in?

8              THE COURT:  Is there anything that anybody else

9      wants to know from him?  Well, you can have at it, because

10     we're going to discharge him.

11             He can come back in.

12             THE DEPUTY CLERK:  Okay.

13             (Juror present.)

14             THE COURT:  So just to -- we have a note, and it

15     identifies the speaker.  But just to confirm, it's the juror

16     that sits next to you, juror number 5 that was the speaker?

17             THE JUROR:  Yes.

18             THE COURT:  All right.  Anything else from anybody

19     for him?

20             MR. VEIN:  No, Your Honor.

21             THE COURT:  Sending you to --

22             Where are we sending him, Karen?

23             THE DEPUTY CLERK:  Judge Young's.  I'll walk him

24     down.

25             (Juror not present.)

1          THE COURT:  Do you want to start with number 1, or
2    do you want to go right to 5?
3          MR. VEIN:  I'd rather go to 5, kind of cut to the
4    chase, if we could, if that's the right way to say it.
5          MR. LOONEY:  He just might highlight the issue even
6    further.
7          THE COURT:  That's what -- I'm sort of thinking we
8    bring them in order just so we don't --
9          MR. VEIN:  I don't object to that, Your Honor.
10          THE COURT:  Okay.  Let's start with number 1.
11          THE DEPUTY CLERK:  Number 1.
12          THE COURT:  We have four alternates, and I can
13    order deliberations down to 11.  So that means we can -- we
14    may not want to, and there may be other reasons, but we could
15    theoretically lose five jurors and still go forward.  And we
16    need a new foreperson, which I would handle.
17          (Juror present.)
18          THE COURT:  How are you?
19          THE JUROR:  Hello.
20          THE COURT:  I know, you're surprised to be here.
21          Here's the scoop.  We got a report over the weekend
22    that a juror made a statement in the hearing of other jurors
23    that he had gotten some information from the Internet about
24    the case.
25          Is that true?

```
1              THE JUROR:  (Nods head.)

2              THE COURT:  For the court reporter, you need a

3    verbal.

4              THE JUROR:  Yes.

5              THE COURT:  And you heard it?

6              THE JUROR:  Yes.

7              THE COURT:  Can you tell us what you heard?

8              THE JUROR:  He heard that Ben Muiruri settled and

9    gave all the money back.

10             THE COURT:  Anything beyond that?

11             THE JUROR:  That was basically the gist of it.

12             THE COURT:  Okay.  And let me ask you this:  If

13   this jury continues deliberating, do you think that you could

14   put that information out of your mind?  Or that's something

15   that you would be -- could influence you one way or the

16   other?

17             THE JUROR:  Possibly.

18             THE COURT:  Okay.

19             THE JUROR:  50/50.

20             THE COURT:  Okay.  All right.  Thanks -- we're

21   going to move you to another room now.  As we speak to each

22   juror, we're going to move you to another room.  So when

23   you're in that other room, don't talk to each other about

24   these conversations.  Okay?

25             THE JUROR:  Understood.
```

 1              THE COURT:  All right.  Thank you.

 2              (Juror not present.)

 3              THE COURT:  All right.  He also will need to be

 4    discharged.

 5              And we're going to have to discharge number 5,

 6    also, so that's three.

 7              THE DEPUTY CLERK:  Just get 2 now?

 8              THE COURT:  Yeah.  Thanks, Karen.

 9              So if we get up to five that we have to discharge,

10    we may as well stop, right?

11              MR. VEIN:  I agree.

12              THE COURT:  We don't need to go through all 12.

13              MR. LOONEY:  That seems to be the math.

14              MR. BRADY:  I don't see a way around it,

15    Your Honor.

16              (Discussion off the record.)

17              (Juror present.)

18              THE COURT:  How are you?

19              THE JUROR:  Okay.

20              THE COURT:  Good morning.

21              I know this is a little unusual, you're probably

22    surprised to be here.

23              THE JUROR:  Yeah.

24              THE COURT:  But we received a report over the

25    weekend that one of the jurors had spoken in front of other

1  jurors about information that he had received over the

2  Internet about this case.

3          Did that happen?

4          THE JUROR:  Yes.

5          THE COURT:  And you heard it?

6          THE JUROR:  Yes.

7          THE COURT:  Can you tell us what you heard?

8          THE JUROR:  Something to do with the husband and

9  that he was found -- I think he was found guilty or got let

10  off because he paid back the money.

11          THE COURT:  Okay.  So obviously, you know, jurors

12  are not supposed to --

13          THE JUROR:  Right.  And we told him that.  Or

14  someone else did.

15          THE COURT:  So if we allow this jury to continue

16  deliberating, do you think that's something that you could

17  put completely out of your mind, or do you think that it's

18  something that could influence you one way or another in

19  regards to deciding this case?

20          THE JUROR:  I think I could put it out of my mind.

21          THE COURT:  When you say you think.

22          THE JUROR:  All right.  No, I don't.  I'll just be

23  honest here.

24          THE COURT:  That's why we're doing this

25  individually.

```
 1          THE JUROR:  Because I think that he was in on it to
 2  begin with.  And this was my thought before he even -- that
 3  was even said.
 4          THE COURT:  Okay.  All right.  So what we're doing,
 5  we're talking to every juror.  Once we talk to you, we're
 6  moving you to another room, put you -- try to keep everybody
 7  separate.  But now we're going to move you to a room with the
 8  foreperson and juror number 1, and I'm going to -- I've
 9  instructed the two of them, and I'm going to instruct you,
10  you should not speak about this conversation.
11          THE JUROR:  Okay.
12          THE COURT:  So I'll move them.
13          THE DEPUTY CLERK:  I'll walk out with you.
14          And then I'll go get number 3?
15          THE COURT:  Three, please.
16          (Juror not present.)
17          THE COURT:  The writing is on the wall.
18          MR. VEIN:  Yeah.
19          THE COURT:  The odds of getting -- not having to
20  discharge anybody else after having discharged the first
21  three seems unlikely.
22          This has happened to you before.  You are the jinx.
23          MR. BRADY:  Your Honor, I'd be happy to just be
24  completely removed.  Perhaps a judicial order.
25          MR. VEIN:  Isn't true that Mr. Tobin is going to
```

1    come back.

2            THE COURT:  Or Ms. Hemani.

3            (Juror present.)

4            THE COURT:  How are you?

5            THE JUROR:  Hi.  Good morning.

6            THE COURT:  Good morning.  I know, you're surprised

7    to be here.  This is not normally how we begin our day.  But

8    it was reported to us over the weekend that one of the jurors

9    said something in front of other jurors about what he learned

10   on the Internet.

11           Did you hear that?

12           THE JUROR:  Yeah.

13           THE COURT:  Can you tell us what you heard?

14           THE JUROR:  He just said something like -- he

15   looked up something, basically.  And then everyone was upset,

16   so he stopped talking about it.  So he said something, but I

17   don't remember exactly what he was saying.

18           We said like he should not have done that,

19   basically.

20           THE COURT:  No, you all did the right thing.

21           Can you be more specific about what you heard him

22   say?

23           THE JUROR:  No, he said he looked about husband.

24   He looked about the husband -- and what was it?  Let me

25   think.  Why he's, like, not talked about and there is a

1    reason.  And then, as far as I remember, he stopped at that,

2    basically.

3              THE COURT:  Okay.  You know that we -- it's

4    important and we went to a lot of trouble to make sure that

5    we had a jury that didn't have any extraneous information

6    about the case when we started.

7              THE JUROR:  Correct, yeah.

8              THE COURT:  And now, obviously, you do.

9              So if this jury continues to deliberate, do you

10   think that you can put what you heard completely out of your

11   mind, or do you think that it could possible influence your

12   view of the case with regards to this defendant?

13             THE JUROR:  So can you repeat again?

14             THE COURT:  So the two options, could you put it

15   completely out of your mind?

16             THE JUROR:  Yeah.

17             THE COURT:  Or do you think that it could, in any

18   way, potentially influence your consideration of this

19   defendant?

20             THE JUROR:  No.  Like based on the instruction you

21   have given, at least a lot of the folks, including me, I

22   think we are focused on that, don't want to get any

23   outside -- that we are very clear.  And that's why everyone

24   just said, no.  And he pretty much felt very bad about it.

25             But, yes, if it's not going to influence any --

1    that's not going to change anything.  We're going to follow

2    the direction that you gave us.

3         THE COURT:  I know -- we're talking to each juror

4    individually.

5         THE JUROR:  Yes.

6         THE COURT:  You can see that we are doing that.

7    Just for you, do you think that you can put it completely,

8    100 percent of out of your mind?  It will have no impact

9    whatsoever on your --

10         THE JUROR:  Yes.

11         THE COURT:  And have you done any extra, outside

12    research on this case at all?

13         THE JUROR:  No time for that, no.

14         THE COURT:  I'm going to have you step out for just

15    a second and see if we have any follow-up questions for you.

16         THE JUROR:  Okay.  Thank you.

17         (Juror not present.)

18         THE COURT:  Does anybody have any follow-up for

19    him?

20         MR. VEIN:  He's not going to change what I said.  I

21    don't agree he's okay, but he's not going to change what I

22    said.

23         THE COURT:  So let's bring him back in for just a

24    moment, Karen.  Because I forgot to tell him what we're

25    doing.

1                    (Juror present.)

2              THE COURT:  So no follow-up questions, but once we

3    talk to each juror, we're sending them to a separate room.

4    Then the jurors we haven't talked to, when you get to that

5    room, it will be the foreperson, and jurors number 1, 2, and

6    you.  So don't talk to them about this conversation, at all.

7    We're basically having the same conversation with each of

8    you, but I don't want to make matters any worse by having any

9    more talk when not all of the jurors are present in the room.

10   Okay?

11              THE JUROR:  Okay.

12              THE COURT:  So Karen will take you down there.

13                    (Juror not present.)

14              THE COURT:  Do you want to go to 5 next?  Or save

15   him for last?

16              MR. BRADY:  Maybe save him for last, see where we

17   stand when we talk to him.

18              THE COURT:  Now we'll go to 6 then.  Okay.

19                    (Discussion off the record.)

20                    (Juror present.)

21              THE COURT:  How are you?

22              THE JUROR:  Good.

23              THE COURT:  I know this is sort of an unusual way

24   to start the day.

25              THE JUROR:  Yeah.

1          THE COURT:  But I'm sure you figured out by now,

2     we're talking to everybody.

3          THE JUROR:  Except you skipped number 5.

4          THE COURT:  Except we skipped number 5, yes.

5          We have heard reports over the weekend that one of

6     the jurors got some information from over the Internet and

7     shared it with other jurors.

8          THE JUROR:  Yup.

9          THE COURT:  Did you hear it?

10         THE JUROR:  I did.

11         THE COURT:  Can you tell us what you heard?

12         THE JUROR:  I heard that Ms. Newton's husband, Ben,

13    was not charged in this crime because he returned the money.

14    It didn't make sense to me, but that's what I heard.  People

15    were very quick to say, "We're not talking about this."

16         THE COURT:  Yeah, no, I appreciate that.

17         We're not here to reprimand you in any way, but we

18    obviously went to some trouble to get a jury that didn't have

19    outside information about the case.  And now you do.  So

20    that's an obligation to sort of explore that a little bit.

21         THE JUROR:  Yup.

22         THE COURT:  Let me ask you -- and this can be a

23    hard question.  But you've now heard information that you

24    should not have heard.  And I actually -- I don't have any

25    external information about this case, so I don't even know if

1    it's true or not.  But do you think that you can put that

2    information completely out of your mind, or do you think that

3    might --

4            THE JUROR:  Absolutely.  Because it didn't make

5    sense to me, anyway.

6            THE COURT:  Do you think that it will creep into

7    your --

8            THE JUROR:  No.

9            THE COURT:  Are you sure about that?

10           THE JUROR:  I am very sure about that.  Because it

11   didn't make any sense to me, and because I've seen too many

12   press reports that are completely inaccurate.  So I didn't

13   put any credence in it.

14           THE COURT:  Okay.  I'm going to have you step out,

15   just to see if anybody has any follow-up questions for you.

16           THE JUROR:  Sure.

17           THE COURT:  But hold on a second, before you do

18   because if I don't have you back in.  Once we talk to jurors,

19   we're moving them to another room to keep everybody -- trying

20   to keep everybody separate.

21           THE JUROR:  Yeah.

22           THE COURT:  So you'll be in another room at the

23   moment with 1, 2, 3, and 4; the foreperson and then jurors 1,

24   2, and 3.  So I'm asking everyone, once you're in that room,

25   don't talk about this conversation, these meetings.  Because

1  whatever has been done, I don't want to compound it.

2          THE JUROR:  I appreciate that.

3          THE COURT:  And just step outside for a moment.

4          (Juror not present.)

5          THE COURT:  So she's okay for present purposes.

6  Any --

7          I should ask first, any follow-up questions for

8  her?

9          MR. BRADY:  No.

10         MR. VEIN:  No.

11         THE COURT:  All right.  Karen, she can go, and

12  let's get number 7.

13         (Juror present.)

14         THE COURT:  How are you?

15         THE JUROR:  Good morning.

16         THE COURT:  Sort of an unusual way to start the

17  day.

18         THE JUROR:  Yes.  To see you on the credenza there.

19         THE COURT:  Yes.  It's the chair shortage.  I don't

20  need to write anything down.

21         I'm sure that you figure out by now that we're

22  calling everybody in one at a time.  And you may have figured

23  out why.  We received a report over the weekend that one of

24  the jurors shared information with other jurors about

25  information that he received over the Internet.

```
1                THE JUROR:  Yeah.

2                THE COURT:  Did that happen?

3                THE JUROR:  Yes.

4                THE COURT:  Did you hear it?

5                THE JUROR:  Yes.

6                THE COURT:  Can you tell us what you heard?

7                THE JUROR:  Just about -- you want every specific

8      word?

9                THE COURT:  That would be fantastic.  If you can.

10               THE JUROR:  The question came up about why wasn't

11     Ben wasn't on trial, and the response from one of the jurors

12     was, "Oh, well, he returned the money."

13               And we were like, "What?  How do you know that?"

14               "Well, I looked it up on the Internet."

15               And we said, "Whoa, that's not supposed to be

16     happening."

17               THE COURT:  So completely honest:  You've been

18     exposed to information that you should not have been exposed

19     to.  And I actually did not do any extracurricular research

20     on this case, so I don't even know if that's true or not

21     true.

22               THE JUROR:  Nor do I.  That's why we don't know if

23     that's factual or not.  Don't know.

24               THE COURT:  But here's the questions for you:  Do

25     you think that that information that you heard is something
```

1    that you can completely put out of your mind when considering

2    this defendant, or do you think that it might creep in and

3    have some --

4            THE JUROR:  It has no bearing on it whatsoever.

5            THE COURT:  Are you confident about that?

6            THE JUROR:  Yes.

7            THE COURT:  I'm going to send you outside to see if

8    any of the parties have any follow-up questions for you.

9    Assuming that they don't, we're sending the jurors that we've

10   spoken with to another room.

11           THE JUROR:  Yeah.

12           THE COURT:  And once you're in that other room, you

13   should not be speaking about this conversation or this

14   meeting.  We're basically having the same conversation with

15   everybody, but to the extent that there's been any harm done

16   here, I don't want to compound it by having more side

17   conversations about it.  Okay?

18           THE JUROR:  Okay.

19           THE COURT:  So step out for a second, and either

20   come back for follow-up or we'll see you in the other room.

21           (Juror not present.)

22           THE COURT:  Okay.  Any follow-up for him?

23           MR. BRADY:  No, Your Honor.  He was pretty clear in

24   his answer.

25           THE COURT:  Okay.  So Karen, he can go there.  And

1    bring in number 8, please.

2              It's odd, though.  I expected mixed answers on

3    this, but it's interesting that the first one couldn't, and

4    the next ones could, all in a big chunk like that.

5              MR. LOONEY:  I'm just laughing at the circumstance.

6    Here we are.

7              (Discussion off the record.)

8              (Juror present.)

9              THE COURT:  Good morning.  I know you did not

10   expect to be here with us this morning.

11             THE JUROR:  No.

12             THE COURT:  And you probably seen by now that we're

13   calling everybody in one at a time.

14             THE JUROR:  Yes.

15             THE COURT:  In mostly numerical order.

16             THE JUROR:  Yes.

17             THE COURT:  And the reason for that is that we

18   heard over the weekend that a juror on Friday had shared

19   information with other jurors that he received over the

20   Internet.

21             Did you hear that?

22             THE JUROR:  Yes.

23             THE COURT:  Can you tell us what you heard?  It's

24   okay.  You're not the first one in that chair.

25             THE JUROR:  The juror was saying that he looked at

1    the case in the Internet and that --

2                    I can say what?

3                    THE COURT:  Yes.

4                    THE JUROR:  That the defendant's husband returned

5    the money, but I guess we're here because she didn't.

6                    THE COURT:  All right.  So hard question --

7                    THE JUROR:  Uh-huh.

8                    THE COURT:  -- but here it is:  Do you think that

9    now that you've heard that information, you can put it

10   completely out of your mind if you continue to deliberate, or

11   do you think that it would be -- it could influence your view

12   of this defendant?

13                   THE JUROR:  To tell you the truth, it's in my mind.

14                   THE COURT:  Okay.

15                   THE JUROR:  Yes.

16                   THE COURT:  Okay.  Thanks.  That's fair enough.

17                   So what we're doing is after we talk to each juror,

18   we're moving you to another room, not back upstairs.  So my

19   only instruction is don't talk to anybody else in that room

20   about this conversation.  We've had the same conversation

21   with everybody, but I don't want to -- whatever harm has been

22   done, I don't want to compound it by having more individual

23   conversations.  Okay?

24                   THE JUROR:  Okay.

25                   THE COURT:  So Karen will take you down there.

1          And then pop your head back in when you're done.

2          (Juror not present.)

3          THE COURT:  All right.  So we are going to have to

4     declare a mistrial.  We don't have enough left.  I'm going to

5     bring juror number 5 in here now, and I'm going to discharge

6     him from here.  I don't need him -- someone can escort him

7     upstairs to get his stuff, and he'll be discharged.

8          Because I'm going to declare a mistrial, I will --

9     if you would like me to, I will ask the jurors and ask them

10    if they're willing to talk to you about what they've heard so

11    far.  Not a count.  I'm going to manage the questions, like

12    not a vote, but if you want to talk to them about what worked

13    and what didn't, you know --

14         MR. VEIN:  Yeah.

15         THE COURT:  If they're agreeable to it, and if

16    you're all agreeable to it, I will ask them if that's

17    something that you would like.

18         MR. VEIN:  And you'll do it, right?  You will be

19    the -- we'd be with you.  The Court would be questioning.

20         THE COURT:  Yes.

21         MR. VEIN:  That's fine with us.

22         THE DEPUTY CLERK:  What are we doing?

23         THE COURT:  I have to -- you're going to go get

24    juror number 5, but then we're going to have to mis-try it.

25    But I was saying that if the jurors are willing to talk to

1    these people, and they can all agree that that's something

2    that they would like to do, I would ask the jury just to

3    inform going forward.

4        MR. BRADY:  And Your Honor, we're agreeable to that

5    as well.  I think it never hurts to learn more about that.

6        And with respect to juror number 5, I -- what he

7    did was outrageous, and I really hope we can get to the

8    bottom of it here.

9        THE COURT:  Let's go get number 5.  And then ask

10   him to bring his stuff, Karen.  I want to discharge him.

11       THE DEPUTY CLERK:  I told them all to bring their

12   stuff, except one of the jurors said he left his cell phone

13   up there.  But I said I would go grab it in a little bit.

14       THE COURT:  I think what we'll do is move them all

15   back.  We'll bring them into the courtroom, and they have to

16   be -- I'm thinking we'll bring them into the courtroom, and

17   then I'll send them upstairs and go back and talk to them.

18       THE DEPUTY CLERK:  So bring 5 down first.

19       THE COURT:  Bring 5 down.

20       MR. VEIN:  You know, I got to say, I'm kind of

21   rethinking it on talking to them.  Because I don't really

22   want the government, since we're going to have to do it

23   again, to get guidance from them.

24       THE COURT:  That's fine.  I won't do it over

25   anybody's objection.

1          MR. VEIN:  I know you won't.

2          THE COURT:  That's fine.

3          MR. VEIN:  Thank you.

4          (Discussion off the record.)

5          THE COURT:  Mr. Butts, we received a report over

6   the weekend that you shared information with other jurors

7   that you got over the Internet.

8          Did that happen?

9          THE JUROR:  Yes, it did.

10          THE COURT:  I gave you very explicit instructions,

11   every single day, not to do that.

12          THE JUROR:  Yes, ma'am.  I'm sorry about that.  I

13   think I was just tired, and it just came out.  But it wasn't

14   going to affect my overall decision, anyway.

15          THE COURT:  Well, it's not about coming out; it's

16   why did it happen to begin with?  Why, when I told you not to

17   get on the Internet, would you have done that?

18          THE JUROR:  That was way beforehand that you

19   instructed me to do that.

20          THE COURT:  Well, you -- how would you have known

21   what case it was before I gave that instruction?

22          THE JUROR:  That same day.  That Monday.

23          THE COURT:  Okay.  You should have let me know that

24   you had done the research on it when you heard me say, every

25   single day, you're not supposed to do research on this case.

1          THE JUROR:  Yes, ma'am.

2          THE COURT:  We went through an entire day, 75

3    jurors, 90 people in that room, inconvenienced for a day, to

4    get a fair and impartial juror.  And then we just spent two

5    weeks trying the case, not to mention all the time and effort

6    that went into the preparation of it.  And now I have to

7    mis-try it.  Because instead of having a jury that went in

8    with an open, impartial mind, without information about the

9    case, you managed to pollute the entire jury.

10         THE JUROR:  That wasn't my intention.  That just

11   happened to come out, and, you know, not that -- I didn't

12   think that was true, but it just happened to come out.  But

13   it's just something that came across the Internet.  I was

14   reading, and I happened to say it.  But that's my fault.  I

15   should not have even said that.  But I didn't believe that.

16         THE COURT:  That's for darn right.

17         THE JUROR:  Yes.

18         THE COURT:  Well, we've had the jurors in here one

19   at a time, and there's not enough of them that feel they can

20   put it out of their mind for the deliberations on this case

21   to continue.  So you've wasted taxpayer money; you've wasted

22   all of our time; you put this defendant in the position where

23   she's going to have to sit through this entire trial over

24   again.

25         THE JUROR:  That wasn't my intention.

1          THE COURT:  Well, it wasn't your intention, but

2     that was the consequence of what happened.  It is just

3     completely inexcusable that you would put us all in this

4     position.

5          So we're going to mis-try the case.

6          Is there anybody else that would like to say

7     anything before I dismiss him?

8          MR. VEIN:  No, Your Honor.

9          THE COURT:  All right.  Karen, he is dismissed.  I

10    don't know if he needs to go down to see Jim, but he's

11    excused and he should leave.

12          THE JUROR:  Can I just say something?

13          THE COURT:  Sure.

14          THE JUROR:  I apologize for bringing that up.  I'm

15    sorry.  This was never my intention to do that.  But, like I

16    said, I was tired that day.  It was a lot on me.  And I

17    should have never said that.  I'm sorry for you guys, all the

18    time that you all put into this case and everything.  That

19    wasn't my intention to say that.

20          And when we was talking, all that information was

21    off the books, and I didn't think nobody was going to say

22    anything.  I didn't mean to influence nobody about the stuff

23    that I said.

24          Like you said, I shouldn't have said that, you

25    know, and I regretted that.  And I told them that I was sorry

1  that I even said that.  You know what I mean?  But that was

2  not my intention, and, you know, I'm very sorry for that.

3          And, you know, I don't know what to say.  But I

4  didn't mean no harm.  I didn't mean no harm in what I said at

5  all.

6          THE COURT:  The damage has been done.

7          THE JUROR:  Yes, you're right about that.  You're

8  excused.  We're going to mis-try the case.

9          Karen, excuse him, and get the other eleven, plus

10  the four alternates, into the courtroom.

11          (Juror not present.)

12          THE COURT:  All right.  When do you want to retry

13  this?

14          MR. BRADY:  The Court's earliest convenience.

15          MR. VEIN:  I can't do it this summer.  And

16  supposedly, you never know if they're really going to go, but

17  I have trials, CJA trials, in the early fall, and then a tax

18  case, a lawyer client, which I think is going to plea.  But

19  if it doesn't, I can't try it until like early December.  I

20  hate putting it out so far, but I just don't know how to

21  manage my commitments.

22          THE COURT:  All right.  I -- I think my calendar is

23  on the bench.  So let's take a look at it, and see if we

24  can -- my trial schedule is also tough.

25          THE DEPUTY CLERK:  Can I have the alternates just

1  go join -- everybody join back and then bring them all in at

2  once?

3          THE COURT:  Yeah.

4          THE DEPUTY CLERK:  Some of them are down here.  Are

5  you going to be in here for a little bit?

6          THE COURT:  Yeah.  Just let us know when you're

7  ready.

8          THE DEPUTY CLERK:  Okay.

9          THE COURT:  So this is what I'd like.  I'm going to

10  discharge the jury.  I'm going to explain to them what

11  happened.  I'm going to go upstairs and talk to them for a

12  few minutes.  I'd like the rest of you to hang in the

13  courtroom while I do that, and then we'll see what we can do

14  for scheduling.  Okay?

15          MR. BRADY:  That sounds fair, Your Honor.

16          THE COURT:  It may be a few minutes, but I know

17  that none of you had anything else scheduled for this

18  morning, anyway.

19          And then if any of the jurors say anything that is

20  worth repeating, it will be fresh on my mind, anyway.  Every

21  time I talk to a jury, they tell me things.  And I'm

22  thinking, "I want to tell the prosecutor that," and then the

23  next time I see them, it's like four months later and I can't

24  remember.

25          MR. BRADY:  Well, see you next time.

1              THE COURT:  I'm sorry, Ms. Newton.  Of all the

2      people this is unfair to, it is particularly unfair to you.

3      And it means you have to live under the threat of this for

4      however long.

5              On the other hand, your defense lawyer has seen the

6      government's case, and that may help him for the next

7      go-around.  But I'm really sorry.  This is -- I do everything

8      in my power to keep anything from happening.  I told my

9      parties before you came in this morning that in my nine years

10     of being a judge, I've never had to mis-try the case.  It

11     doesn't happen very often, but when it does, it's very hard

12     on everybody, and not to mention the time and resources and

13     everything else.

14             MS. NEWTON:  Yes.  You did the right thing.

15             THE COURT:  So that's where we are.

16             (Court in recess at 10:46 a.m.

17             and reconvened at 10:48 a.m.)

18             (The following held in the courtroom.)

19             THE COURT:  George, what about the weeks of

20     October 2nd and 9th?

21             MR. VIEN:  October 2nd, US vs. Frank Loconte, jury

22     trial.  So no is the answer, unfortunately.

23             THE COURT:  You have to be -- you have to be backup

24     for any of these days, anyway.  But I'm just looking at the

25     ones that I think might --

1          MR. VIEN:  At the end of October, I have a -- it's

2     a CJA case, but it's one of those death resulting cases.  And

3     I've been trying for a year to get them to drop the death

4     resulting, and the client would plead to everything else.

5     But it's gone all the way up, and the answer is no.

6          THE COURT:  Okay.  I can't -- I have a -- I have

7     another criminal case the 16th to the 23rd that I'm

8     100 percent positive is going to go.

9          (The jury enters the courtroom.)

10          THE COURT:  All right, gang, thanks for everybody

11     being here and the alternates.  I told two of the alternates

12     they didn't have to come today, and then I ended up calling

13     them over the weekend and telling them that they did.  So

14     thank you for your flexibility over there.

15          So it came to our attention over the weekend that

16     one of the jurors had shared with the rest of the jury

17     information that he had received over the Internet.  That is

18     obviously extremely inappropriate and very unfair to the

19     defendant.  It makes it very, very difficult to go on.  The

20     only possible way to go on, and not even for certain, would

21     be to see if we could get 12 of you who said you could

22     completely put it out of your mind.  And we spoke to each

23     juror individually up to a point, and it became clear that we

24     weren't going to be able to clear enough people to have a

25     jury of 12 people that could deliberate without being

influenced by what had happened.

So the jurors that we spoke to that told us that they couldn't be impartial, I really want to thank you for your honesty.  That's not an easy question to answer under those circumstances.  So I'm going to mis-try the case.  It's going to need to be tried again.  So this turns out to be not only a massive waste of time and resources but hard on the defendant.  So it's unfortunate.

In all my years of being a judged, I never had to mis-try a case.  It happens rarely.  But as I'm sure, you can appreciate the instructions that we give are important and need to be followed.

So I've already dismissed juror number 5.  I'm going to dismiss the rest of you now.

I'm going to send you back upstairs.  I'd like to come up and talk to you.  I talk to every jury at the end of the case, so if you can spare a few minutes, I'd like to just thank you and answer any questions that you have about the process and suggestions on what we could do better.  I'll literally be up like 30 seconds after I discharge you all.

Just in case you don't wait around upstairs -- it's voluntary, I hope you will.  But if you don't, that's up to you.  But in case I don't get to speak to you upstairs, you no longer have to keep an open mind.  You may communicate about the case with whoever you want, in whatever form you

1   want.  All that I would ask is that you sort of respect

2   people's privacy.  Things that got said in the jury room --

3   and I think it will be fairly public information -- it will

4   certainly be on the public docket that we had to mis-try the

5   case, but maybe some discretion about why that is, just so

6   the juror who is -- who I discharged is embarrassed and upset

7   and ashamed and everything else, so maybe keep his name out

8   of it.

9            But other than sort of being respectful of other

10  people, your First Amendment rights are fully restored, and

11  if you want to do any extra curricular research on the

12  Internet, do whatever you want to do.  That's all fair game.

13           So I'm going to come upstairs and thank you more

14  personally, but I really want to thank you for your time and

15  attention.  And I know, in a situation like this, it can feel

16  like it didn't matter because we don't have a verdict; but it

17  does matter, and the fact that you were here and attended

18  every day and paid attention the way that you did is such an

19  affirmation of the system and how it works here.

20           So you all should be proud of the work that you've

21  done.  It didn't -- it didn't end -- no case ends the way

22  everybody wants it to.  But this one didn't end the way

23  anybody wanted it to.  So nonetheless, here we are.

24           So I'm going to discharge you.  We're all going to

25  rise for you one more time, and I'll be upstairs in just a

1    moment.

2                (The jury exits the courtroom.)

3                THE COURT:  I won't be long.  So maybe you guys

4    start preparing calendars and seeing if there's any hope.

5    I'll be back.

6                (Court in recess at 10:54 a.m.)

**CERTIFICATE OF OFFICIAL REPORTER**

I, Rachel M. Lopez, Certified Realtime Reporter, in and for the United States District Court for the District of Massachusetts, do hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing pages are a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 18th day of July, 2023.

/s/ RACHEL M. LOPEZ

_____
Rachel M. Lopez, CRR
Official Court Reporter