```
                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MASSACHUSETTS


                                    )
UNITED STATES OF AMERICA,           )
                                    )         Criminal Action
          Plaintiff,                )         No. 21-10035-ADB
                                    )
v.                                  )
                                    )
FAITH NEWTON,                       )
                                    )
          Defendant.                )
                                    )



                       LOBBY CONFERENCE

         BEFORE THE HONORABLE ALLISON D. BURROUGHS
              UNITED STATES DISTRICT JUDGE


                       July 7, 2023


        John J. Moakley United States Courthouse
                    Courtroom No. 17
                    One Courthouse Way
              Boston, Massachusetts  02210




                           Kelly Mortellite, RMR, CRR
                           Official Court Reporter
                           One Courthouse Way, Room 3200
                           Boston, Massachusetts  02210
                           mortellite@gmail.com
```

APPEARANCES:

On Behalf of the Government:
William B. Brady
Christopher R. Looney
United States Attorney's Office MA
1 Courthouse Way
Suite 9200
Boston, MA 02210
617-748-3287
william.brady@usdoj.gov
christopher.looney@usdoj.gov

On Behalf of the Defendant:
George W. Vien
Michelle R. Pascucci
Nathaniel R. B. Koslof
Donnelly, Conroy & Gelhaar, LLP
260 Franklin Street
Boston, MA 02110
617-720-2880
Fax: 617-720-3554
gwv@dcglaw.com
mrp@dcglaw.com
nrbk@dcglaw.com

```
                    P R O C E E D I N G S
```
**OPEN COURT:**

THE COURT: I see Mr. Sultan is here with his client. Do you want to discuss this out back, or do you want to -- how do you want to handle this?

MR. VIEN: I'm fine with doing it in open court, Your Honor.

THE COURT: Okay. So first, the defendant's motion for judgment of acquittal is denied. It's very well-briefed, but I think there's enough on every issue to get it over the hurdle. So I'm denying the motion.

Just a practice pointer for the government, when you're filing something under seal, you can file it as an attachment sealed with the original. Because when I'm at home at night and I open up something and it's all black, that's not useful. It was super unuseful last night. I'm just going to say that, but I got it this morning.

Mr. Vien, let's start, what do you want to do?

MR. VIEN: I want you to strike Dr. Eaton's testimony and explain why; that there was a discovery violation. Not to belabor it. There was a discovery violation, and that's why you're striking his testimony.

THE COURT: All right. So the remedy for a discovery violation does not require me to strike the testimony because he's here available for cross-examination, if you want to do

1  that.

2  Can we do this up at sidebar?  I'd rather do this up
3  at sidebar.

4  MR. VIEN:  Your Honor, I don't object to going out
5  back.

6  **PROCEEDINGS HELD IN LOBBY:**

7  THE COURT:  So just a few thoughts, okay.  I'm not
8  telling anybody how to do their job, but I read over Eaton's
9  testimony last night, and it seemed to me not very helpful to
10 the government.  I'm not really sure what you think you got out
11 of it.  I don't know if he didn't say what you wanted him to
12 say or he did say what you wanted him to say and I'm missing
13 it.  It just doesn't seem particularly effective.

14 But for you, I'll hear them on striking it, but I
15 don't think they got very much out of it.  So you might be
16 better off having all of this read in, which I'm willing to do.
17 So let me hear from them first, and then I'll turn to you.  I'm
18 just throwing it out there, that I'm willing to consider all
19 remedies.  But, I don't know, I'm just not sure what makes the
20 most sense to be fair.  I want to be sort of fair to you, but
21 I'm mostly concerned with being fair to them at this point.

22 MR. LOONEY:  I understand.  We don't think striking is
23 appropriate.  It's unnecessary.  The relevant question is
24 whether they have the opportunity to use this information
25 effectively.  Dr. Eaton is here.  They have an opportunity to

1 cross-examine him. That's one method to use this information
2 effectively. We're not going to object to -- we might normally
3 object to some of this coming in. We're not going to object to
4 any of it being used against him. That's one way to make this
5 use -- effectively, impeach the witness, alternative statement.
6 It doesn't have to be this one. It can be something else. If
7 he wants a continuance to investigate some of the issues, we
8 wouldn't object to that.
9     THE COURT: Well, what I would do is I would read the
10 statement and then I would let him cross-examine.
11     MR. LOONEY: Do both, that's fine.
12     THE COURT: You would not have the opportunity to do
13 the direct first and blunt all of these issues.
14     MR. LOONEY: Absolutely.
15     THE COURT: I'll read this and give him the
16 opportunity to cross.
17     MR. VIEN: Your Honor, it may not have been done
18 artfully, but I actually had a theory with Dr. Eaton, knowing
19 what I knew about him, and I tried to walk that fine line
20 between impeaching him and making him less credible but not
21 beating him up so badly that it would have been obvious to the
22 world and therefore obvious to Ms. Newton that she shouldn't be
23 dealing with a doctor like this. And this changes the calculus
24 completely. And I can't go back and all of a sudden change our
25 tactics as far as cross-examination. And that's why I'm asking

1    you to strike the testimony.
2           And, you know, the jury should know what happened in
3    my opinion.  And what happened was, obviously there are
4    discovery rules.  There are discovery orders.  They're supposed
5    to turn over this material, and they didn't turn over the
6    material.  And that's why we're.  You know, I don't want to
7    just read the statement.  I want you to strike it.
8           And just so we're clear for the First Circuit, I am
9    objecting to anything other than striking because I don't want
09:08 10 to be up there again and them say, Well, you waived that
11   objection.
12          So if you're going to read something, I don't want to
13   bring him back on the stand and let him be rehabilitated and go
14   in a different direction, which he could do, because I'm fairly
15   content with what we had to work with where we left Dr. Eaton.
16   So I don't want him back on the stand.
17          If you're not going to bring him back on the stand, I
18   think you have to explain to the jury not just the background
19   of all of these investigations but that there was a discovery
09:09 20 violation and that should have been turned over to the defense
21   prior to cross-examination, which is true, and then also
22   explain more fully the Maestro situation and how that ended up,
23   that they ultimately settled for $10 million.
24          And then finally, I don't know what's going on with
25   this last -- you know, we talked to the A.G.'s Office and they

1   told us that there was an investigation but they're not going
2   to tell us anything more.  They still haven't fulfilled their
3   discovery obligations.  And this has turned over basically on
4   the last day of evidence at trial.  And I don't want a
5   continuance.  I want a full explanation about what happened,
6   and I want you to tell the jury what happened.  And obviously,
7   I keep asking for you to strike his testimony and I know you're
8   not going to do that, but I want to make sure it's clear.
9           THE COURT:  I'm not going to do that, but you can't
10  have it every which way.  You don't get to have -- if I struck
11  his testimony, I would say, without laying any blame on these
12  two, I would say there was a discovery violation and as a
13  result I'm striking the testimony.  I'm not going to go into
14  all of this and strike the testimony, right.  That's like --
15          MR. VIEN:  I don't want you to blame these guys.
16          THE COURT:  I'm not going to blame them.
17          MR. VIEN:  So we're clear, so they don't run back to
18  their office and get everyone all wound up, I'm not accusing
19  them of misconduct --
20          THE COURT:  Do you think --
21          MR. VIEN:  -- accusing them --
22          THE COURT:  -- a sensitive about it or Josh is more
23  sensitive about it?
24          MR. VIEN:  I think there's a synergistic relationship
25  where Josh, Kelly, Patrick Callahan and these guys get in a

1  room, they start talking about being perfect and how this is
2  imperfect, and then it gets worse and worse and worse and
3  spirals out of control.
4       THE COURT: I don't think that's right. The
5  sensitivity is not limited to this case or that group. They're
6  all very sensitive about it.
7       MR. LOONEY: I just want to put on the record that all
8  of us in our office are trying to do the right thing as best as
9  we can.
10      THE COURT: No one is impugning you, Mr. Looney.
11      MR. VIEN: All I was trying to say is that the
12 government -- I don't want you to say these guys -- that the
13 government committed a discovery violation and that's why we're
14 striking the testimony.
15      MR. LOONEY: I want to go back to the law on this,
16 which is that the First Circuit is clear, the inquiry is not
17 why the delayed disclosure occurred. It's whether the
18 information, the material that was delayed could be used
19 effectively --
20      THE COURT: Mr. Looney, I know the law on this and so
21 does Mr. Vien. And I'm not saying I'm going to strike the
22 testimony, but just to be clear, the First Circuit law did not
23 arise in the context of this being disclosed on the last day of
24 a two-week trial right before we close. All these discovery
25 violations happened with a little bit of time that we don't

1    really have here.  And it's not fair to them or to the jury to
2    require a continuance when they don't want it and we told the
3    jury we were going to close.
4             So I know the law and they know the law and you know
5    the law.  I'm trying to figure out here what makes the most
6    sense and is the most fair and is the safest for the integrity
7    of this trial going forward.  I get the law.  I don't have to
8    strike his testimony.  There's nothing that requires me to do
9    it.
10            MR. VIEN:  Nothing prevents you from doing it either.
11            THE COURT:  Nothing prevents me from doing it either.
12   Just so the record is clear, from my point, I read over his
13   testimony.  It's not mission-critical.  I'm not gutting your
14   case, right.
15            Your theory on cross-examination was that he didn't
16   know that anything he was doing was wrong until later, right?
17   Is that the point you were trying to make?
18            MR. VIEN:  But he also has some credibility issues.
19            THE COURT:  This is not inconsistent with that.
20            MR. VIEN:  Well, he also had some credibility issues,
21   and that's why he needed the proffer letter.  So it was a fine
22   line.  And I'm not saying I did it artfully, but I was trying
23   to make it to dust him up, question his credibility enough so
24   the jury wouldn't believe it but not so much that the jury
25   thinks she should have known this guy was a bad doctor because

1    that was implicit in some of the other testimony.  So that's
2    what I was trying to do.  And this throws off the calculus
3    completely, which is why I don't want him back on the stand.
4              THE COURT:  Right.  I'm not sure it does throw off the
5    calculus.  What were the years he was with Arbor?
6              MR. LOONEY:  Commencing 2014.
7              THE COURT:  This doesn't really overlap with that.
8    And there wasn't any -- you know, there weren't any changes,
9    there wasn't anything that she should have known about here,
09:13 10   right?  So this is not inconsistent.
11             I'm not sure it doesn't help your theory by -- I don't
12   think this gets laid at her doorstep necessarily.  So I'm
13   reserving on whether or not I strike the testimony.  If I don't
14   strike the testimony, what's your fallback, short of, I'm not
15   going to strike the testimony and read all of this?
16             MR. VIEN:  Right.
17             THE COURT:  So if I'm not going to do both of those
18   things, what is your second choice?
19             MR. VIEN:  Okay.  Without waiving all my objections,
09:14 20   my second choice is to say that if you're not going to strike
21   his testimony --
22             THE COURT:  No.  I said I'm not going to strike his
23   testimony and read all of this.
24             MR. VIEN:  Right.  So that's what I was trying to say.
25   If you're not going to strike his testimony and you're not

|        |                                                                       |
|--------|-----------------------------------------------------------------------|
| 1      | going to read all of that, then the only thing I can ask for is       |
| 2      | a statement to the jury that there was a discovery violation.         |
| 3      | THE COURT:  No.  You're misunderstanding me.                          |
| 4      | MR. VIEN:  I know.                                                    |
| 5      | THE COURT:  Option two, strike the testimony with very                |
| 6      | limited instructions.  Option three, more detailed instructions       |
| 7      | like this statement but not strike the testimony.  Option four,       |
| 8      | you know, some permutation of all those things.                       |
| 9      | MR. VIEN:  Strike with a short explanation that there                 |
| 09:15 10 | was a discovery violation by the government, not by these guys      |
| 11     | by name, and that's why you're striking the testimony.  That's        |
| 12     | given the options I have, without waiving my objections.              |
| 13     | MR. LOONEY:  I would object to striking his testimony.                |
| 14     | I think it's just unnecessary given the other remedies                |
| 15     | available, less dramatic remedies.                                    |
| 16     | THE COURT:  Can I borrow your pen?                                    |
| 17     | MR. VIEN:  Of course.                                                 |
| 18     | THE COURT:  What about this?  I read the statement and                |
| 19     | we add some language to the end of it to the effect that, I           |
| 09:16 20 | want the gist of it to be that we don't have any reason to          |
| 21     | believe Ms. Newton knew about any of this, either the                 |
| 22     | government either -- to the extent that the investigations were       |
| 23     | not public and did not involve Arbor.  I'd like to do something       |
| 24     | that preserves your theory of this.                                   |
| 25     | MR. VIEN:  I think that you can just say definitively                 |

1  Ms. Newton knew none of this information.
2          THE COURT:  Well, I don't, I don't know that
3  definitively, right?
4          MR. VIEN:  There's no evidence or information that
5  Ms. Newton knew any of this when she was dealing with Dr.
6  Eaton.
7          MR. LOONEY:  That makes total sense to us.
8          THE COURT:  Okay.
9          So how about something like this:  None of these
09:17 10  investigations or interviews were made public.  Do you want me
11  to say the government is not aware of any or just there's no
12  evidence --
13          MR. VIEN:  There's no evidence that Ms. Newton was
14  aware of any of it.
15          THE COURT:  How about that Ms. Newton knew or should
16  have known about any of this?
17          MR. VIEN:  I like known or should have known.
18          THE COURT:  Known about -- what do you want to say?
19  Known about any of the alleged conduct?
09:18 20          MR. VIEN:  Any of the alleged investigations or
21  conduct.
22          THE COURT:  These investigations or the alleged
23  underlying conduct.
24          MR. VIEN:  I like that.
25          THE COURT:  There's one typo in here.  I'm just going

1  to fix if I can find it again.
2           Maybe there wasn't.  I thought I saw one in there.  I
3  will read the statement with this addendum.  He'll be out of
4  the room because nobody wants to recall him and I don't want
5  the jury to understand that's an option.
6           Just out of curiosity, what does Mr. Sultan have to
7  say about all of this?
8           MR. VIEN:  I spoke to him briefly.  He told me that he
9  or his client did not reveal this information to the
10 government.  And to say it as nice as possible, he was quite
11 surprised that the government didn't turn this over in a timely
12 fashion even though he did not inform them of the information.
13          THE COURT:  That of course would be his position,
14 right?
15          MR. VIEN:  He's got a job.
16          THE COURT:  He's got a job.  It was done imperfectly
17 in this situation, not that I don't do mine imperfectly every
18 day, so I'm willing to accept that.
19          All right.  As long as we're all sitting here
20 together, where are we on the indictment?
21          MR. VIEN:  The indictment, to save time, Your Honor,
22 the government is agnostic about it going back, and I object to
23 it going back.
24          THE COURT:  Great.  It's not going back.  I don't like
25 it going back.  I'd rather not have it go back.  I think I put

1  enough in the instructions that sort of cover what everybody --
2          MR. BRADY:  That's where we came down, Your Honor.
3          THE COURT:  I'd rather add information in that way.
4  Okay.  That takes care of the indictment.  I know we had five
5  things.  I left my list outside.
6          The jury instructions we'll do on the bench.  I need
7  the computer.
8          MR. VIEN:  Co-conspirator statements.
9          THE COURT:  Co-conspirator statements.
09:21 10         MR. VIEN:  I think the only one that we've gone
11 through that we have an issue with is Adriana O'Donoghue
12 testified that Rosa Riviera told her to bill for visits that
13 weren't done.  Do I have that correct?
14         MS. PASCUCCI:  Mm-hmm.
15         MR. VIEN:  And Rosa Riviera is not a member of the
16 conspiracy based on the evidence in this case.  So that's a
17 real problem under Petrozziello because I don't think the court
18 should -- the court can do what the court wants, but I don't
19 think the court --
09:21 20         THE COURT:  It doesn't feel like that when you're the
21 court, you know.
22         MR. VIEN:  Really?
23         THE COURT:  No, it doesn't.
24         MR. VIEN:  I will never know that feeling and I guess
25 I'm glad about that.  So anyway, I think it's a violation of

|   |   |
|---|---|
| 1 | Petrozziello because you let the testimony in provisionally and |
| 2 | now we're in a position where it was not a statement in |
| 3 | furtherance of the conspiracy.  So I have to ask under |
| 4 | Petrozziello, I think the remedy under Petrozziello is often a |
| 5 | mistrial, so I want to make sure I ask for one on the record. |
| 6 | I know you're not going to do it. |
| 7 | THE COURT:  We'll deal with that one statement. |
| 8 | MR. LOONEY:  If we may be heard briefly. |
| 9 | THE COURT:  I'll hear the government on it, but even |
| 09:22 10 | assuming that that statement has not been properly -- was |
| 11 | improperly provisionally heard by the jury, the remedy for that |
| 12 | single thing in the course of this trial is not going to be a |
| 13 | mistrial. |
| 14 | MR. LOONEY:  The statement was an instruction, not a |
| 15 | statement admitted for the truth of the matter.  An instruction |
| 16 | is not a statement.  It's conduct.  It wasn't, she didn't say, |
| 17 | "Faith Newton told me that X is true.  It was, "This is how to |
| 18 | do this.  Do it this way."  And that's an instruction. |
| 19 | THE COURT:  Did I give a limiting instruction on that |
| 09:23 20 | testimony? |
| 21 | MR. VIEN:  Honestly I don't remember with specificity, |
| 22 | but I don't know.  I don't think you did. |
| 23 | MS. PASCUCCI:  I don't think so. |
| 24 | THE COURT:  So I can go back and give an instruction |
| 25 | on that.  That draws more attention to it.  And the instruction |

```
 1   will be it's not -- even if the jury takes it to be true, I'm
 2   not sure it redounds to your client in any meaningful way.
 3           MR. VIEN:  I understand.  I'm trying to preserve the
 4   objection, other than a mistrial in light of the overarching
 5   trial, and I don't want you bringing more attention to the
 6   statement.
 7           THE COURT:  Okay.  So I'm willing to give an
 8   instruction, not a curative instruction, but just an
 9   instruction that when somebody gives somebody else an order,
10   not the defendant, they can consider that for the fact that
11   there's an explanation for why somebody takes the next step,
12   but when that person is not here to be cross-examined, they
13   can't -- I just think it gets to be very convoluted and draws
14   more attention to the issue than you may want.  If you want an
15   instruction, I'll give it.
16           MR. VIEN:  I don't think we want one.
17           THE COURT:  Okay.  I know there were five of them.
18   Let me see. So we had Eaton.  We had co-conspirator.  We had
19   the indictment.  We had the jury instructions.  I have it
20   written on my pad out there.  Does anybody remember what the
21   fifth one was?  Oh, the verdict form.
22           MR. BRADY:  Which is fine for us, Your Honor.
23           THE COURT:  Verdict form?
24           MR. VIEN:  It looks fine to me.
25           THE COURT:  Okay.  All right.  So let's go out and
```

1   work on the charge.
2           MR. VIEN:  Ms. Pascucci reminds me that our
3   Petrozziello objection, if that's the right way to phrase it,
4   would also extend to the files that were let in that contained
5   co-conspirator statements, and she can probably articulate it
6   better than I can.
7           MS. PASCUCCI:  Our Petrozziello objection would extend
8   to the Arbor files that were admitted.  This includes personnel
9   files and patient files.  I understand the government's
10  position on this is that these weren't admitted for their truth
11  but were rather admitted because they were false.  Even if that
12  was true, there is evidence that would be for the truth, for
13  example, the patient at issue, the date of his supposed visit,
14  things like that.  So we would say that some of these were
15  people where there was absolutely no other evidence heard about
16  these individuals during trial.  So the only basis for that
17  being a co-conspirator is the statement itself, which is not
18  allowed under 801.
19          THE COURT:  The dates of appointments and things,
20  those seem like part of the business record to me.  So what are
21  the -- are the statements that you want excluded on that basis
22  things like the date of the appointment?
23          MS. PASCUCCI:  I think it would be the entries that
24  are in the patient files, like the dates, the name of the
25  patient.  It would basically be the underlying data to the

```
 1  files.
 2          THE COURT:  Okay.  I'm not going to -- I'm finding
 3  that's appropriate.  I'm not going to strike that.
 4          So I don't think there were -- do you guys want any
 5  kind of instruction on differentiating between the
 6  co-conspirator hearsay statements for the two conspiracies?
 7          MR. VIEN:  I don't think there were any offered in the
 8  money laundering conspiracy.
 9          THE COURT:  Right.  But I mean theoretically, I mean,
10  the statements that come in for the health care fraud
11  conspiracy should not be considered in the money laundering
12  conspiracy.
13          MR. VIEN:  I see what you're saying, yes.
14          THE COURT:  That may go without saying since there
15  wasn't anything really they would consider for the money
16  laundering conspiracy.  But as a technical point, do you want
17  anything on that?
18          MR. VIEN:  We might as well ask for it, Your Honor.
19          THE COURT:  The thing is, it's hard to craft because I
20  don't want to say "co-conspirator."
21          MR. VIEN:  Right.
22          THE COURT:  It's hard to explain to the jury.
23          MR. VIEN:  I don't think it's going to be to our
24  benefit actually.
25          THE COURT:  All right.  Let's go out and deal with the
```

```
1   charge then.
2   (Lobby conference concluded, 9:27 a.m.)
3
4
5                           * * * *
6
7               CERTIFICATE OF OFFICIAL REPORTER
8
9           I, Kelly Mortellite, Registered Merit Reporter
10  and Certified Realtime Reporter, in and for the United States
11  District Court for the District of Massachusetts, do hereby
12  certify that the foregoing transcript is a true and correct
13  transcript of the stenographically reported proceedings held in
14  the above-entitled matter to the best of my skill and ability.
15                  Dated this 10th day of July, 2023.
16
17                  /s/ Kelly Mortellite
18                  _____
19                  Kelly Mortellite, RMR, CRR
20                  Official Court Reporter
21
22
23
24
25
```