UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| v. | * | |
| | * | |
| FAITH NEWTON, | * | Criminal Action No. 21-cr-10035-ADB |
| | * | |
| | * | |
| Defendant. | * | |
| | * | |

## MOTIONS FOR NEW TRIAL, TO ARREST JUDGMENT AND TO DISQUALIFY THE PROSECUTORS

BURROUGHS, D.J.

Following a trial that lasted for approximately two weeks, on July 19, 2024, a jury

convicted Defendant Faith Newton of conspiring to commit health care fraud (18 U.S.C. § 1349),

health care fraud (18 U.S.C. §§ 1347 and 2) and three counts of money laundering (18 U.S.C. §

1957). She was acquitted of conspiring to commit money laundering (18 U.S.C. § 1956(h)).

Currently pending before the Court are Defendant's motions for a new trial [ECF No. 770], to

arrest judgment [ECF No. 774], and to disqualify the prosecutors and the Office of the United

States Attorney of the District of Massachusetts ("U.S. Attorney's Office") [ECF 777]. Each of

the motions is DENIED.

### A. Relevant Facts and Procedural History

Defendant was indicted in January 2021. [ECF No. 1]. The case was originally assigned

to a different judge. [ECF No. 5]. At the time of Defendant's arrest, the government moved for

pretrial detention, [ECF No. 10], and, following a hearing and additional briefing, [ECF Nos. 17,

19], on February 11, 2021, Magistrate Judge Kelley entered an order of voluntary detention,

[ECF No. 21]. On February 23, 2021, Defendant moved for release from custody. [ECF No.

24].  Magistrate Judge Kelley held a hearing on the motion and took the matter under advisement on March 4, 2021, [ECF No. 29], and then on March 11, entered an order of detention and denied the motion for release.  [ECF Nos. 31, 32].  Defendant appealed the detention decision to the district court judge then presiding over the case (Judge O'Toole).  [ECF No. 43].  Following some briefing and motion practice, Judge O'Toole held a hearing on the appeal on June 24, 2021, took the matter under advisement, and then denied the appeal on July 8, 2021.  [ECF Nos. 58, 62].  Defendant appealed her detention to the First Circuit on July 22, 2021, [ECF No. 63], which denied the appeal and affirmed the detention on October 4, 2021, [ECF No. 73], with the mandate issuing on October 25, 2021, [ECF No. 74].

On January 9, 2022, Defendant filed a new motion for release, [ECF No. 87], and a supplement to that motion on January 21, 2022, [ECF No. 98].  Magistrate Judge Kelley held a hearing on this motion on January 24, 2022, took the matter under advisement, and denied the motion on February 18, 2022.  [ECF Nos. 99, 108].

On June 24, 2022, Defendant, now acting pro se with standby counsel, filed an emergency motion for immediate release from custody, [ECF No. 156], which was denied on July 18, 2022, again by Magistrate Judge Kelley, [ECF No. 179].  Defendant appealed the denial of release to Judge O'Toole, who affirmed the ruling on July 27, 2022.  [ECF No. 183].

On August 5, 2022, Defendant filed an "emergency motion to reopen matter of detention/reconsideration," [ECF No. 189], which was again denied by Magistrate Judge Kelley on August 22, 2022, [ECF No. 204].

On August 31, 2022, Defendant filed another "emergency motion for immediate release from custody," [ECF No. 210], and the next day appealed the denial of the previous motion for release (docketed at ECF No. 189) to Judge O'Toole, [ECF No. 214].  Judge O'Toole denied the

appeal and affirmed the detention on September 7, 2022, [ECF No. 218], and, that same day, also denied the most recently filed motion for release, [ECF No. 219].

On January 27, 2023, Defendant filed another motion for release, [ECF No. 284], which the government opposed, [ECF No. 290]. On February 10, 2023, with that motion still pending, the case was reassigned to this Court. [ECF Nos. 288, 289]. On March 7, 2023, Magistrate Judge Kelley recused herself, and Magistrate Judge Boal was assigned to the case. [ECF Nos. 307, 308]. On March 15, 2023, this Court referred the pending motion for release to Judge Boal, [ECF No. 309], who held hearings on the motion on March 24 and March 29, 2023, [ECF Nos. 318, 322].

On March 31, 2023, Defendant filed a "submission regarding her ongoing detention," which included the following regarding her proposed release conditions:

> Ms. Newton is willing to abide by any of these conditions and any others which may be recommended by the Court or the Probation Office:
>
>> She resides with her husband and two children at 2 Woolsack Drive, Westford, Massachusetts 01886[.]
>>
>> She is subject to GPS monitoring and placed on 24/7 home confinement[.]
>>
>> Any travel outside of the home will only be done with notice to and preapproval of the Probation Office and be limited to travel for medical appointments, meetings with counsel, and weekly attendance at her church. Any travel will be restricted to the District of Massachusetts[.]
>>
>> She surrenders her U.S. and Kenya passports, as well as any current or invalid forms of Kenya identification, and not apply for new passports if expired[.]
>>
>> Her family, including husband and children, also surrender their passports. Husband Ben Muiruri does not currently possess his passport as he had submitted it for renewal to the State Department but would be willing to surrender it immediately upon its return[.]
>>
>> Defense counsel would send notice to the Kenyan consulate of her pending charges with instructions not to issue her a new passport or other travel documents[.]

3

She signs a secured appearance bond in the amount of $900,000 which shall be fully collateralized by the following five properties, all of which are held by third parties who will provide agreement in writing to this condition upon request:

> 18 Bodwell Avenue, Lowell, Massachusetts 01854
> 18 Windsor Street, Lowell, Massachusetts 01851
> 30 Angle Street, Lowell, Massachusetts 01851
> 11 Dean Drive, Lowell, Massachusetts 01854
> 17 Cassandra Lane, Nashua, New Hampshire 03064

She abides by all statutory conditions of release as well as any other conditions set forth in 18 U.S.C. 3142(c)(1) which this Court deems necessary[;] and

An Order of Extradition executed by this Court, and signed by Ms. Newton, is held in abeyance unless any of the foregoing conditions has been violated[.]

These conditions should provide the Court confidence that Ms. Newton will not (and cannot) flee the country should she be released from Wyatt Detention Center.

[ECF No. 324]. On April 21, 2023, Judge Boal granted her motion and revoked the detention order. [ECF No. 340]. Because the government had made clear its intention to appeal the order, Judge Boal stayed the release decision until after this Court ruled on any appeal. [Id. at 7−8].

On April 27, 2023, the government appealed the detention decision to this Court. [ECF No. 342]. Defendant filed her brief in opposition to the appeal on April 28, 2023. [ECF Nos. 343]. On May 15, 2023, after the government's time to submit further briefing had passed, this Court entered the following order:

Judge Allison D. Burroughs: MEMORANDUM AND ORDER entered. For the foregoing reasons, the government's appeal of Judge Boal's order that revokes the prior detention order [ECF No. 342] is DENIED. The case is referred back to Judge Boal to set appropriate release conditions. Judge Boal has outlined her thoughts on release conditions in her Order and this Court agrees that strict conditions should be set given the financial resources that might be accessible to Newton and the incentive to flee given the possibility of a conviction and, in that event, further incarceration.

[ECF No. 350]. Bond hearings were held on May 17 and 18, [ECF Nos. 355, 356], and Defendant was released on the exact conditions she had proposed, [ECF No. 357].

Trial in this matter, with Defendant being represented by attorney George Vien, began on June 26, 2023. [ECF No. 412]. During jury deliberations, this Court was notified of an issue with the jury, spoke to the parties, interviewed the jurors individually, and determined that the case needed to end in a mistrial. [ECF Nos. 445, 447]. No party objected to the mistrial, and Defendant said the Court "did the right thing." [ECF Nos. 449, 44:14].

The retrial began on July 8, 2024. [ECF No. 740]. Defendant represented herself with attorney Thomas Iovieno acting as standby counsel. On July 19, 2024, she was convicted on five counts (one count each of health care fraud and health care fraud conspiracy, and three counts of money laundering) and acquitted on one count (money laundering conspiracy). [ECF No. 767]. The motions at issue here followed.[1]

### B. Motion For A New Trial

#### 1. Legal Standard

On a motion for a new trial under Federal Rule of Criminal Procedure 33, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "In considering a motion for a new trial, district courts may 'weigh the evidence and evaluate the credibility of witnesses, . . . [but] the remedy of a new trial is sparingly used, and then only where there would be a miscarriage of justice and where the evidence preponderates heavily against the verdict.'" United States v. Merlino, 592 F.3d 22, 32 (1st Cir. 2010) (quoting United States v. Wilkerson, 251 F.3d 273, 278 (1st Cir. 2001)). "[I]t is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment." Id. (quotations omitted). "A district court 'judge is not a

---

[1] The government filed oppositions to Defendant's motion for a new trial, [ECF No. 783], motion to arrest judgment, [ECF No. 786], and motion to disqualify counsel, [ECF No. 795].

thirteenth juror who may set aside a verdict merely because he would have reached a different result.'" United States v. Rivera-Rangel, 396 F.3d 476, 486 (1st Cir. 2005) (quoting United States v. Rothrock, 806 F.2d 318, 322 (1st Cir.1986)).

In addition, on a Rule 33 motion, the court may also "consider whether its evidentiary rulings at trial were correct." United States v. DiMasi, 810 F. Supp. 2d 347, 362 (D. Mass. 2011), aff'd sub nom. United States v. McDonough, 727 F.3d 143 (1st Cir. 2013) (citing Wilkerson, 251 F.3d at 279–80). "However, a new trial is justified only if an error concerning the admission of evidence was made and the error was not 'harmless,'" meaning "'it is highly probable that the error did not contribute to the verdict.'" Id. (quoting Wilkerson, 251 F.3d at 280).

### 2.  Request For Recusal

Defendant asks that this Court recuse itself from ruling on the motion for a new trial pursuant to 28 U.S.C. § 144. [ECF No. 770 at 1]. This provision requires recusal when a judge has an actual "personal bias or prejudice either against [the party moving for recusal]… or in favor of any adverse party." 28 U.S.C. § 144; In re Cooper, 821 F.2d 833, 838 (1st Cir. 1987) (stating that "the alleged bias and prejudice, to be disqualifying under § 144, must be personal and it must stem from an extrajudicial source"). As this Court has no actual bias or prejudice for or against Defendant stemming from a personal or extrajudicial source, and as none has been alleged, §144 is inapplicable.

28 U.S.C. §455 provides a broader basis for recusal, requiring that a judge "shall disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned." 28 U.S.C. §455(a). As relevant here, this includes where a judge has a financial interest in the outcome of the case, a personal bias or prejudice towards a party, or certain prior

relationships with parties or events relevant to the case.  See generally 28 U.S.C. §455(b).

Moreover, "[w]hile § 455(a) is not quite as strict as § 144 in mandating an extrajudicial source of

prejudice… mere disagreement over the state of the law or the correctness of the judge's factual

findings will not suffice."  In re Cooper, 821 F.2d at 838 ("It is a judge's job to make credibility

determinations, and when he does so, he does not thereby become subject, legitimately, to

charges of bias."); see also Liteky v. United States, 510 U.S. 540, 555 (1994) ("[J]udicial rulings

alone almost never constitute a valid basis for a bias or partiality motion.").

        Here, Defendant's arguments in support of recusal are based primarily on disagreements

with the Court's prior rulings in her case.  This is an insufficient basis for recusal.  Liteky, 510

U.S. 540 at 555.  Moreover, none of the statutory factors are present here, nor has Defendant

presented any evidence that this Court's impartiality should reasonably be questioned.  See

generally [ECF No. 770].  As such, the motion is also denied under §455.

            **3.  Violation of Right to Counsel of Choice**

        A criminal defendant has the right to hire a lawyer, to have counsel appointed if she

cannot otherwise afford counsel, or to represent herself with or without standby counsel.[2]  Those

are the options.  Here, Defendant has, at various times, availed herself of each of these options.

---

[2] United States v. Kar, 851 F.3d 59, 65–66 (1st Cir. 2017) ("Criminal defendants have a
fundamental right of representation by effective counsel throughout the trial process… [and]
maintain an alternative right to self-representation."); United States v. Maldonado, 708 F.3d 38,
42 (1st Cir. 2013) (Sixth Amendment right to counsel "is not absolute," "must be balanced
against the judge's need to ensure the orderly progress of the trial," and "cannot be insisted upon
in a manner that will obstruct reasonable and orderly court procedure") (internal citations and
quotations omitted).

As more fully set forth elsewhere in the lengthy record of this case, see, e.g., [ECF No. 713], Defendant hired attorney George Vien to represent her in the first trial.[3]  Following the mistrial, it was represented to the Court that Defendant had run out of funds, and the Court appointed Mr. Vien to continue the representation.  [ECF No. 487].  Thereafter, Mr. Vien sought to withdraw several times.  [ECF Nos. 536, 541, 549].  After Defendant agreed that she no longer wanted Mr. Vien as counsel,[4]  the Court appointed attorney Tracy Miner.  [ECF No. 556].  These changes in counsel inevitably caused delays in the trial date, which the Court tried to minimize in

---

[3] Notably, Mr. Vien was Defendant's fourth counsel in this case.  She initially hired Brad Bailey and Raymond Sayeg to represent her.  [ECF Nos. 16, 20].  On January 13, 2022 attorneys Sayeg and Bailey moved to withdraw, [ECF No. 95], and Magistrate Judge Kelley denied the motion, [ECF Nos. 96, 109].  Attorneys Sayeg and Bailey renewed their motion on March 11, 2022. [ECF No. 114, 118].  Magistrate Judge Kelley allowed this motion with the understanding that the attorneys would remain in the case until new counsel had entered an appearance.  See, e.g., [ECF Nos. 118, 125, 127].  By April, Defendant still had not retained new counsel, and attorneys Sayeg and Bailey again moved to withdraw.  [ECF No. 130].  Magistrate Judge Kelley allowed the motion to withdraw and appointed attorney Thomas Kerner as standby counsel until Defendant found new counsel of her choice.  [ECF Nos. 132, 133, 134].  On August 22, 2022, Defendant asked that attorney Kerner be replaced, and Magistrate Judge Kelley appointed attorney Jennifer McKinnon in his stead.  [ECF Nos. 204; see also docket entry dated 08/24/2022].  Attorney Vien appeared for defendant on October 3, 2022. [ECF No. 237].

[4] The conversation went as follows:

> THE COURT: I have 80 jurors coming in tomorrow. If you want to proceed tomorrow with Mr. Vien and Ms. Pascucci, I will take that under advisement, excuse the government and we will talk about that. That's choice number one. Choice number two. You go to trial tomorrow. You represent yourself. They're advisory counsel. That's choice number two. Choice number three. You represent yourself tomorrow. Choice number four. If you want and you tell me that you want another lawyer, I will try and find you another lawyer, although the way you treat your lawyers, I'm not sure I can find another lawyer to represent you. But if you tell me you want another lawyer, I will try and find you one, and trial will be delayed while that person gets up to speed; or you can hire your own lawyer, which would also require a continuance while that lawyer gets up to speed. Those are your options. What do you want to do? Pick one. I don't want any passive-aggressive malarky about how this is my decision. You pick one of these options. DEFENDANT: Yes. I want another lawyer, and I also have a motion to file now pro se.

[ECF No. 595 at 4:13–5:8].

the interests of justice, but also because Defendant was continuing to insist on her right to a speedy trial despite the fact her repeated decisions to switch counsel were largely causing the delays.  At one point, after Ms. Miner explained that she could not be ready for trial earlier because of previously scheduled trial commitments, the Court took the unusual step of contacting other judges and arranging to have Ms. Miner's other trials continued so that she could be available for a trial for Defendant on a more expedited basis.  [ECF No. 597 at 6:1–8:23].  The Court successfully moved these trials to allow Defendant to proceed to trial with Ms. Miner on a more expeditious timetable. [ECF No. 583 at 4:13–16].[5]

Throughout these proceedings, the Court was explicit with Defendant numerous times that, although she could make whatever decisions she wanted regarding counsel, the July 8, 2024 trial date was firm.  See, e.g., [ECF No. 618; ECF No. 649 at 8:6–15].  Thereafter, with full knowledge of the impending trial date, Defendant stated that she wanted Ms. Miner to withdraw[6] and elected to represent herself at trial.[7]  The Court eventually appointed attorney Iovieno as

---

[5] The transcript reads, in relevant part: THE COURT:  All right.  On another topic, I did speak to Judge Joun and Judge Casper, and they would both move their current trial dates if that changes the calculus at all for anybody.

[6] See, e.g., [ECF No. 597 at 3:17–24 (THE COURT: All right. This was initially scheduled for Ms. Miner to have a chance to take a look at all the materials, take a look at the motion to dismiss and sort of see where we were in terms of a trial date. Since then she's filed a motion to withdraw. So first, to you, Ms. Newton, do you want Ms. Miner to withdraw? THE DEFENDANT: Yes.)].

[7] See e.g., [ECF No. 649 at 8:6–15 (THE COURT: All right. So they've got two motions to withdraw pending. We are going to trial on this case on July 8. So, Ms. Newton, you have three choices. You can represent yourself with standby counsel, and the standby counsel will either be Ms. Miner's firm, or I can approach Mr. Vien if you'd prefer him for standby counsel; you can go to trial with them representing you, or you can hire a new lawyer of your choice with the understanding that we are going to trial on July 8. So what is your position on this? THE DEFENDANT: I want to represent myself.)]

standby counsel, [ECF No. 669], and he attended each day of the trial, sat at counsel table next to Defendant and appeared to be assisting her as she required, including with jury selection, by reading trial transcripts of unavailable witnesses, helping her with objections, and by assisting with displaying exhibits to the jury and at sidebars.  See [ECF Nos. 740, 744, 747, 752, 753, 757, 760, 762]. [8]

Defendant's claim that her right to counsel was violated is misplaced.  The Court made every effort to ensure that Defendant's Sixth Amendment right to counsel was protected.  Yet, while knowing of the trial date and insisting on a speedy trial, Defendant repeatedly fired her counsel or put them in a position where it was impossible for them to continue representing her. [9] She hired multiple attorneys, fired multiple attorneys, was appointed counsel (including the appointment of counsel that she initially hired herself), rejected appointed counsel, and ultimately elected to represent herself.  The choices she made were her own, but there can be no doubt that the parameters of the Sixth Amendment were met.

### 4.  Judicial Misconduct

Defendant cites several examples of alleged judicial misconduct, all of which are heavy on innuendo and speculation, and none of which support her request for a new trial.

---

[8] Defendant also argues that she is entitled to a new trial because the government "violated the defense camp," which "so prejudiced the defendant as to prevent her chance of obtaining a fair trial."  [ECF No. 770 at 4].  This Court is aware of no instance in which the government improperly remained in the courtroom during discussions about counsel or otherwise invaded the defense camp.  The Court is only aware of one instance in which the government was privy to privileged conversations between Defendant and her counsel, and that occurred when Defendant shared that communication with the Court, Probation, and the government.  Moreover, there is nothing improper about government attorneys having entered appearances in the criminal case and the related forfeiture case.

[9] Attorneys Sayeg and Bailey detailed their reasons for withdrawing in their filings noted above, as did attorneys Vien and Miner.  See, e.g., [ECF Nos. 536, 541, 549, 569, 619].

The first involves a series of text messages between this Court and acting U.S. Attorney Levy concerning the appeal of the release order issued by Magistrate Judge Boal, [ECF Nos. 340, 342]. The exchange at issue took place two days after the government had appealed Judge Boal's release order. In that exchange, this Court consulted with the acting U.S. Attorney to make sure that he knew about the appeal and to confirm that the office wanted to pursue what this Court thought was an ill-advised appeal of the magistrate judge's opinion. Acting U.S. Attorney Levy responded that the government did intend to go forward with the appeal. Thereafter, this Court denied the appeal, resulting in the release of Defendant from pretrial custody. [ECF No. 350].

First, this was not misconduct. Claims of judicial misconduct rise and fall on prejudice to the complaining party. United States v. Márquez–Pérez, 835 F.3d 153, 158 (1st Cir. 2016). Defendant has not and cannot provide any evidence of prejudice arising from these texts, particularly given that the appeal discussed in the messages was resolved in her favor. [ECF No. 350]. In the absence of such prejudice, these messages are not grounds for a claim of judicial misconduct or, certainly, a new trial. To the extent Defendant is arguing that these text messages required the Court to recuse itself, these texts do not evidence actual bias under § 144 or call into question the Court's impartiality towards Defendant under § 455; if anything, the texts show a favorable view of Defendant's arguments regarding the release order appeal and a negative view of the government's arguments.

Second, Defendant waived this argument. Attorney Vien notified her of the exchange in April 2023, before even the first trial, much less the second trial. No effort was made to raise this issue by Mr. Vien or Ms. Miner and was only raised by Defendant after she was convicted at that second trial. As the First Circuit has recognized in a different context, "It strikes us as

manifestly unfair for a defendant to sit silently by, take [her] chances with the jury, and then be allowed to ambush the prosecution through a post-trial attack." United States v. Walker, 665 F.3d 212, 228 (1st Cir. 2011).

Defendant's next assertion of judicial misconduct concerns her belief that this Court had improper conversations with Magistrate Judges Kelley and Boal with regards to the release litigation. All of Judge Kelley's decisions not to release Defendant were made prior to the case being assigned to this Court, each of those decisions is a matter of public record (as detailed above), and this Court had no role in any of those decisions as the case was pending before a different judge. Even assuming that there were conversations between this Court and either of the magistrate judges after the case was reassigned, such conversations would not have been improper. There was no improper conduct here, but again, the ultimate rulings on the release and the appeal were in Defendant's favor, she suffered no prejudice from those rulings, and therefore they cannot support a motion for a new trial.

Defendant also claims that it was judicial misconduct for this Court to allow her release conditions to include the surrender of passports held by her husband and children. The facts do not support this. As recounted above, the conditions of Defendant's release were handled before various magistrate judges. The conditions were proposed and agreed to by Defendant. [ECF Nos. 324, 357]. Several months later, on December 13, 2023, she brought the issue of the passports before this Court, [ECF No. 506], and asked to have the passports returned to allow her husband and adult children to travel. The government opposed the request. [Id.]. This Court agreed to speak with Probation about it. [Id.]. Five days later, the parties filed an assented to motion to have the passports returned, [ECF No. 508], which this Court granted the next day, [ECF No. 509]. On January 16, 2024, the Clerk's Office received an email from Defendant in

which, inter alia, she again complained about the passports, [ECF No. 555]. The next day, after

looking into the matter, the Court issued the followed docket entry:

> On December 19, 2023, the Court agreed to modify the conditions of Defendant's pretrial release and ordered that the passports of Defendant's children be returned without restriction, and that the passport of her husband be return upon Pretrial Services' receipt of a verified travel itinerary. [ECF No. 509]. Thereafter, at a pretrial hearing on January 11, 2024, Defendant represented that the passports had not been returned to her family as directed by the Court and that both the State Department and U.S. Probation were claiming not to be in possession of them. The Court agreed to look into the status of the passports and now understands that, despite the representations made by Defendant, she had been told by Probation on several occasions that the passports were in the Probation Office and available for pickup by her children and by her husband once he provided his travel dates. Thus, for avoidance of doubt, Defendant is advised, again, that her family may retrieve their passports from the Probation Office as set forth above.

[ECF No. 558]. Again, this course of conduct in no way supports the notion of prejudice to the

Defendant nor justifies her request for a new trial.

Defendant goes on to argue that it was misconduct to allow the government to bring a

money laundering charge that was allegedly motivated in part by the broad forfeiture permitted

by the money laundering statute. It is not the role of the Court to bring charges against a

defendant or to tell the government what charges to bring. Dismissal of a charge when there is

an allegation of prosecutorial misconduct would require the Court to find that the government's

conduct in bringing the indictment was "serious and blatant… that [it] distorts the integrity of the

judicial process." United States v. Font-Ramirez, 944 F.2d 42, 46 (1st Cir. 1991). Additionally,

"even where misconduct is present, post-conviction dismissal of an indictment is a rare event, in

large part because the petit jury's verdict ordinarily cures any failings in the grand jury process."

Id. Defendant was tried and convicted on money laundering as the result of a validly returned

indictment and a trial in front of a jury of her peers. [ECF No. 767]. The charges here were not

improper, it was not the Court's role to police them, and Defendant has not provided evidence

that the trial here did not cure any flaw in the indictment.  As such, these allegations also do not support a new trial.

Finally, Defendant asserts that this Court contradicted itself and acted as a prosecutor.  A reading of the transcripts she attaches to her motion does not support any of that.  But more importantly, all of the attached transcripts come from the first trial, which ended in a mistrial, and therefore have no bearing on whether there should be a new trial following the subsequent trial which ended in a guilty verdict against Defendant.

### 5.  Evidentiary Issues

Lastly, Defendant makes a series of evidentiary arguments in support of her motion for a new trial.  None of these individually or taken together require a new trial.

She first argues that the government admitted evidence at the second trial that was not available at the first.  There is no requirement that the government use the same evidence at a second trial or that they be precluded from relying on different evidence.  Fusco v. Gen. Motors Corp., 11 F.3d 259, 265 (1st Cir. 1993) (explaining there is no "general rule prohibiting a party from offering new evidence at a second trial").  Just as Defendant had the right to use different evidence, so did the Government.  There is no suggestion that the use of Exhibit 813, the focus of her argument, violated any of the rules of discovery or was otherwise improper beyond the fact that it was not introduced at the prior trial.

She next complains that the government called Regina Arrey as a witness at the first trial, but not the second.  For the same reasons discussed above, this is not misconduct or grounds for a new trial.  Further, Defendant could have called her a witness herself or even asked to have her prior testimony read to the jury as was done with other witnesses from the first trial.

Defendant goes on to assert that there were <u>Brady</u> violations. <u>Brady</u> and its progeny require the production of exculpatory or impeachment evidence. <u>United States v. Orlandella</u>, 96 F.4th 71, 93 (1st Cir. 2024). Mounting a successful Brady claim requires a three-part showing of materiality: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the [government], either willfully or inadvertently; and prejudice must have ensued." <u>Id.</u> at 97 (quoting <u>Strickler v. Greene</u>, 527 U.S. 263, 281–82, (1999)). None of the evidence described by Defendant in her motion qualifies as exculpatory and thus it was not incumbent on the government to produce such evidence, even assuming that it was in its possession. [ECF No. 770 at 10–11]. Moreover, the government asserts, and the record reflects, that it in fact produced all documents in its possession related to the categories Defendant has identified, and Defendant has not pointed to any evidence that would rebut this. [ECF No. 783 at 11]. Her claim fails on all three prongs of the <u>Brady</u> materiality analysis.

Finally, Defendant cites to new evidence that she claims shows that MassHealth overpaid Arbor Homecare Services less than $90,000, asserting that her discovery of this new evidence entitles her to a new trial. [ECF No. 770 at 11–12]. To prevail on a motion for a new trial based on newly discovered evidence, a defendant must demonstrate that (1) the evidence was unknown or unavailable to the defendant at the time of trial; (2) failure to learn of the evidence was not due to lack of diligence by the defendant; (3) the evidence is material, and not merely cumulative or impeaching; and (4) it will probably result in an acquittal upon retrial of the defendant. <u>United States v. Wright</u>, 625 F.2d 1017, 1019 (1st Cir. 1980). Defendant has failed to meet even the first of these prongs, providing no explanation or argument for how the evidence at issue was unavailable at the trial. The documents she attaches to her motion were all addressed to Arbor

Homecare Services and seem to have come from Arbor, which suggests that the records were in her possession from the outset and therefore available for her use at either of the trials. It is thus not clear that this is new evidence, that she did due diligence to discover the evidence, or that it was the responsibility of the government to locate or produce such evidence (even assuming that it did not). Further, regarding materiality, the relevance and weight of these documents turn on whether MassHealth had complete information when it calculated these numbers, which is unlikely given the nature of the allegations and the fact that the indictment in this case was not returned until 2021, suggesting that there was investigation beyond the April 2018 end date of the MassHealth Audit period. Lastly, proof of a dollar loss different from what is charged in the indictment is not a variance, and proof of a specific dollar loss is not an element of the charges of conviction, dooming her argument on the fourth prong.

### C.  Motion to Arrest Judgment Pursuant to Fed.R.C.P. 34

Defendant moves for this Court to arrest judgment. This is essentially a claim that the Court does not have jurisdiction over the offense(s) of conviction.

First, the rule requires that such motions be filed within 14 days after the court accepts a verdict. In this case, the verdict was accepted on July 19, 2024, and the motion was not filed until August 5, making it untimely. See [EF Nos. 767, 774].

Second, the Court properly has jurisdiction over healthcare offenses that involve defrauding any "health care benefit program" which includes Medicaid and MassHealth. See [ECF Nos 572, 573].

### D.  Motion to Disqualify the Prosecutors for the District of Massachusetts[10]

In her third post-trial motion, Defendant moves to disqualify the prosecutors and the Office of the United States Attorney for the District of Massachusetts in its entirety.  [ECF No. 777].  While a district court "may disqualify an attorney to prevent a lawyer's presence from tainting a trial, for perceived conflict of interest, to protect the integrity of the judicial process, to enforce its rules against transgressors, or to maintain public confidence in the legal profession," the burden for disqualification is high, as it should be "a measure of last resort."  United States v. Kouri-Perez, 992 F. Supp. 511, 511–12 (D.P.R. 1997).  "[D]isqualification of an entire U.S. Attorney's Office is a 'drastic measure' and 'rarely – if ever' appropriate."  United States v. Murphy, No. 21-1588, 2023 WL 10409247, at *1 (1st Cir. Dec. 11, 2023), cert. denied, 144 S. Ct. 1376, 218 L. Ed. 2d 438 (2024).

In support of this motion, Defendant raises three primary arguments: (1) the recusal of various prosecutors and judges assigned to her case throughout these proceedings warrants further investigation and evidences a conflict of interest; (2) the conditions of her release from detention were unlawful and the appeal of that release violated due process, including because of the previously discussed text messages between this Court and the U.S. Attorney's Office regarding a potential appeal; and, (3) various other actions by the government during and following trial rise to the level of "misconduct" warranting disqualification.  All of these arguments fail.

First, reasons for judges recusing themselves do not concern the defendant particularly where, as here, they are personal and unrelated to the case.  Tavares v. O'Brien, No. CIV A 04-

---

[10] Defendant asks that this Court recuse itself from considering this motion.  That request is denied.  As discussed above, there is no conflict of interest or other cognizable basis for this Court to recuse itself from consideration of this motion or any other aspect of this case.

40059-FDS, 2007 WL 2908828, at *16 (D. Mass. Sept. 27, 2007) (explaining that "while it would have been helpful if the trial judge had indicated his reasons for the denial [of a request to recuse], the question of recusal is within the discretion of the judge" and thus no explanation was needed). The same is true of the U.S. Attorney's decisions to make changes in the prosecution team.

Second, regarding the conditions of Defendant's release and the subsequent appeal, it is worth noting again that the release conditions imposed on Defendant at the time of her release were exactly the conditions that she, through counsel, proposed. [ECF No. 357]. When she later raised concern about having to relinquish the passports belonging to her husband and children, this Court took steps to have the passports returned, which they ultimately were, although their return was delayed by the Defendant's failure to retrieve them from the Probation Office. [ECF No. 558 ("The Court agreed to look into the status of the passports and now understands that, despite the representations made by Defendant, she had been told by Probation on several occasions that the passports were in the Probation Office and available for pickup by her children and by her husband once he provided his travel dates.")].

Additionally, to reiterate, the acting U.S. Attorney did not intervene in any decision making regarding the appeal of Defendant's release. The government opposed Defendant's release, and this Court overruled the objection, ordering that Defendant be released on the conditions she offered. The government's appeal was also not a violation of due process or "based on illegal reasons," as Defendant suggests. [ECF No. 777 at 7-9]. Defendant argues that, in the previously discussed text messages to this Court, the U.S. Attorney made clear that he was only appealing because "Magistrate Kelley had not 'given her blessing.'" [Id. at 9]. The record does not support this allegation. As is made clear in her opinion regarding Defendant's release,

Magistrate Judge Boal did not indicate that she disagreed with Magistrate Judge Kelley's determination regarding the risk of flight.  Rather, by the time the motion for release got to Judge Boal, she was faced with a different set of circumstances, namely that the length of the detention, given the elapsed time between indictment and trial, raised due process concerns.  In the text string, acting U.S. Attorney Levy was seemingly saying that appealing the decision was not unreasonable given that another Magistrate Judge had been willing to detain, which was public record.[11]

Fourth, Defendant raises the issue of prosecutorial misconduct at trial.  This argument focuses on the issue of whether a copy of the indictment should have been provided to the jury and, if so, whether there should have been redactions.  As the parties were told on the record, it is not this Court's practice to read the indictment to the jury or to provide them with a copy of the indictment, although it will consider doing so if a party asks.[12]  [ECF No. 780 at 3:11–21].  That said, Defendant asked to have portions of the indictment read to the jury during the Court's preliminary instructions to the jury, and all of the sections she requested were read to the jury during those early instruction.  [ECF No. 780 at 4:2–5:18, 7:7–8:5].  The parts of the indictment not read to the jury during preliminary instructions were not requested by either party and, for the most part, included charges not brought against Defendant and a detailed recounting of the facts underlying the charges against her.  As the case moved towards the jury charge and closing

---

[11] In support of her argument regarding her release from detention, Defendant once again calls attention to alleged conversations between this Court and the magistrate judges.  It is unclear how this would warrant disqualification of the U.S. Attorney's Office even if it were improper, which, as discussed supra, it is not.

[12] This is in line with the First Circuit's clear guidance that "[w]hether an indictment is given to the jury is within the sound discretion of the trial judge.  United States v. Chen, 998 F.3d 1, 9 (1st Cir. 2021) (citing United States v. Medina, 761 F.2d 12, 21–22 (1st Cir. 1985)).

arguments, this Court presented a draft redacted indictment to the parties which included those portions that Defendant had asked to have read at the outset, but redacted the more prejudicial details included in the document, and asked if either party wanted the indictment to go back with the jury and if so, whether there were things that they wanted added or deleted to the draft being circulated by this Court. Ultimately both parties agreed that the indictment should not go to the jury, redacted or otherwise.[13] The representations in Defendant's motion are false.

Finally, none of the other arguments and assertions contained in Defendant's motion or the attached exhibits warrant this Court disqualifying the prosecutors from the case. Evidentiary issues or disagreements do not warrant disqualification and can be addressed on appeal. False statements in a press release, assuming that there were any, similarly cannot be said to have influenced the outcome of the case where all of the jurors were questioned during jury selection about any knowledge of the case and each of them said they had no prior knowledge.[14]

---

[13] The relevant portions of the transcript include the following:

> THE COURT: Here is the question. Do you want the indictment to go back with the jury?... I have honestly never sent back an indictment in a criminal case, never. But she asked to have it read during the openings, so what I thought was at a minimum we'd send back what we read. I left more in there at this stage, more for like context, but I'm happy to take some of that out. MR. BRADY: Yeah. I think if we send anything back, I think maybe we just stick with what was read before. I think the reason why usually it doesn't go back is I think it generally it's not helpful to the defendant but I also understand. THE COURT: Well, that's why I agree with you that I don't typically find it helpful for the defendant, which is why I redacted it to try and give her what she wants but not more than that. So you want to look at it with Mr. Iovieno. DEFENDANT: I don't think it's necessary for you to send it. Do you think it's necessary? THE COURT: I never send it. And the reason I don't send it is because I don't think it's good for the defendant to have the jury read what all the allegations are….But it's up to you.

[ECF No. 781 at 3:15–5:1]; see also [ECF No. 780].

[14] And again, the statements Defendant points to in the press release involve her ownership of Arbor Homecare Services, proof of which is not required for the elements of the charges against her.

**E.  CONCLUSION**

For the reasons set forth herein, Defendant's Motion for a New Trial, [ECF. No. 770], is

<u>DENIED</u>.  Her Motion to Disqualify, [ECF No. 777], is <u>DENIED</u>.  And her Motion to Arrest

Judgment, [ECF No. 774], is <u>DENIED</u>.

**SO ORDERED.**

August 28, 2024                                            /s/ Allison D. Burroughs
                                                                    ALLISON D. BURROUGHS
                                                                    U.S. DISTRICT JUDGE